1  **BURSOR & FISHER, P.A.**
   L. Timothy Fisher (State Bar No. 191626)
2  Joel D. Smith (State Bar No. 244902)
3  Yeremey O. Krivoshey (State Bar No. 295032)
   1990 North California Blvd., Suite 940
4  Walnut Creek, CA 94596
   Telephone: (925) 300-4455
5  Facsimile:  (925) 407-2700
   E-Mail:  ltfisher@bursor.com
6          jsmith@bursor.com
7          ykrivoshey@bursor.com

8  **NATHAN & ASSOCIATES, APC**
   Reuben D. Nathan (State Bar No. 208436)
9  600 W. Broadway, Suite 700
   San Diego, California 92101
10 Telephone; (619)272-7014
11 Facsimile:  (619)330-1819
   E-Mail: rnathan@nathanlawpractice.com
12

13                 **UNITED STATES DISTRICT COURT**

14                 **NORTHERN DISTRICT OF CALIFORNIA**

15

| | |
|---|---|
| MAKINDE PECANHA and SHAUN RAY BELL, on behalf of themselves and all others similarly situated, | Case No. |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| v. | |
| THE HAIN CELESTIAL GROUP, INC., | **JURY TRIAL DEMANDED** |
| Defendant. | |

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

1    Plaintiffs Makinde Pecanha and Shaun Ray Bell (collectively, "Plaintiffs") bring this action on behalf of themselves and all others similarly situated against The Hain Celestial Group, Inc. (otherwise referred to as "Defendant"). Plaintiffs make the following allegations based upon information and belief, except as to the allegations specifically pertaining to themselves, which are based on personal knowledge.

**INTRODUCTION**

1. This is a class action lawsuit against Defendant for selling its JĀSÖN® brand deodorant sticks as "natural" when, in fact, they contain unnatural or synthetic ingredients.

2. Created in 1993, The Hain Celestial Group is an American company that focuses on food and personal care products. With a market capitalization of $2.69 billion dollars, Defendant's products range from herbal teas, offered through their Celestial Seasonings brand, to personal care products through its JĀSÖN® brand. Defendant is headquartered in Lake Success, NY and regards itself as a "leading organic and natural products company." Defendant's JĀSÖN® brand was created in1959 and claims that when it was founded, "being safe and wholesome meant simply avoiding certain chemicals." Consistent with Defendant's self-promotion of the JĀSÖN® brand as a leader in natural cosmetics, it claims "the list of synthetics and chemicals the JĀSÖN® brand chooses not to use in formulations is ever expanding, the JĀSÖN® brand also sets the industry standard in safety testing."

3. Defendant's JĀSÖN® brand created and continues to maintain a "JĀSÖN® Code of Honor," which is displayed prominently on its website to further promote and advertise its product line. The JĀSÖN® Code of Honor states, among other things, that JĀSÖN® products contain "safe, gentle and effective ingredients."

4. Among other purportedly "natural" products, Defendant manufactures, distributes, advertises and sells JĀSÖN® 's Unscented (Men and Women), Purifying Tea Tree, Soothing Aloe Vera, Nourishing Apricot, Fragrance Free, and Calming Lavender Deodorant Sticks (collectively, "the Products").

5. Consistent with Defendant's self-promotion as a leader in natural personal care products, the front packaging of each one of the Products clearly states that it is "Naturally Fresh," "Pure Natural Deodorant," "Pure Natural Deodorant Stick," and/or "Natural Pioneer Since 1959."

6. To reinforce the message that the Products are natural products, the front packaging of every Product displays pictures of leaves and flowers.

7. Contrary to the labeling, however, every purportedly natural Product contains tocopheryl acetate, glycerin and ethylhexylglycerin. Tocopherol Acetate is a synthetic, inert ingredient which is used pre- and post-harvest as an ingredient in pesticide formulations applied to growing crops or to raw agricultural commodities after harvest. *See* 40 C.F.R. §180.910. Glycerin is a factory-produced texturizer that is created by a complex process, used as a filler and thickening agent. *See* 7 C.F.R. §206.605. A technical evaluation report compiled by the USDA AMS Agricultural Analytics Division for the USDA National Organic Program explains that glycerin is "produced by a hydrolysis of fats and oils" and is listed as a "synthetic (nonagricultural) nonorganic substance." Ethylhexylglycerin is a synthetic conditioning agent and preservative. It also is an eye irritant and may cause dermatitis when used on people with sensitive skin. In April 2016, the Federal Trade Commission ("FTC") filed a complaint against a cosmetics manufacturer for representing that its products were "natural" when they contained ethylhexylglycerin. The company agreed to cease marketing the products in question as being "natural."[1]

8. Plaintiffs and members of the classes described below paid a premium for Defendant's Products over comparable products that did not purport to be natural products. Contrary to representations on the Products' labeling, instead of receiving natural products, consumers receive products with unnatural and/or synthetic ingredients.

9. Defendant's representation that the Products are "natural" is unfair, unlawful, and fraudulent conduct, is likely to deceive members of the public, and continues to this day. As such, Defendant's practices violate California's Consumer Legal Remedies Act, Cal. Civ. Code § 1750 *et*

---

[1] https://www.ftc.gov/news-events/press-releases/2016/04/four-companies-agree-stop-falsely-promoting-their-personal-care (last visited March 21, 2017).

*seq.* ("CLRA"), California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.* ("UCL"), and California's False Advertising Law, Cal. Bus. & Prof. Code § 17500 *et seq.* ("FAL"). Plaintiffs also bring claims for fraud, unjust enrichment and breach of express warranty.

## JURISDICTION AND VENUE

10. This Court has personal jurisdiction over Defendant. Defendant purposefully avails itself of the California consumer market and distributes the Products to hundreds of locations within this County and thousands of retail locations throughout California, where the Products are purchased by thousands of consumers every day.

11. This Court has original subject-matter jurisdiction over this proposed class action pursuant to 28 U.S.C. § 1332(d), which, under the provisions of the Class Action Fairness Act ("CAFA"), explicitly provides for the original jurisdiction of the federal courts in any class action in which at least 100 members are in the proposed plaintiff class, any member of the plaintiff class is a citizen of a State different from any defendant, and the matter in controversy exceeds the sum of $5,000,000.00, exclusive of interest and costs. Plaintiffs allege that the total claims of individual members of the proposed Class (as defined herein) are well in excess of $5,000,000.00 in the aggregate, exclusive of interest and costs.

12. Venue is proper in this District under 28 U.S.C. § 1391(a). Substantial acts in furtherance of the alleged improper conduct, including the dissemination of false and misleading information regarding the nature, quality, and/or ingredients of the Products, occurred within this District.

## PARTIES

13. Plaintiff Makinde Pecanha ("Pecanha") is a citizen of California, residing in Richmond, California. In or about March 2017, Mr. Pecanha purchased a JĀSÖN® deodorant stick from a Walgreens in Anaheim, California. Prior to purchasing the JĀSÖN® deodorant stick, Mr. Pecanha saw and read the front of the product packaging, and relied on the representation and warranty that the product was "natural." Mr. Pecanha understood that representation to mean that JĀSÖN® deodorant sticks did not contain synthetic chemicals. Mr. Pecanha purchased the

1   JĀSÖN® deodorant stick at a substantial price premium, and would not have bought the product
2   had he known that the labeling he relied on was false, misleading, deceptive and unfair.  Mr.
3   Pecanha would purchase the Products again in the future if Defendant changed the composition of
4   the Products so that they conformed to their "natural" labeling and marketing.

5   14. Plaintiff Shaun Ray Bell ("Bell") is a citizen of California, residing in San Diego,
6   California.  Since 2015, Mr. Bell has made several purchases of Defendant's JĀSÖN® deodorant
7   sticks in or near San Diego, California.  Prior to purchasing JĀSÖN® deodorant sticks Mr. Bell a
8   read and saw the front of the product packaging, and relied on the representation and warranty that
9   the product was "natural."  Mr. Bell understood these representations to mean that JĀSÖN® sticks
10  deodorants did not contain synthetic chemicals.  Mr. Bell purchased JĀSÖN® sticks deodorants at a
11  substantial price premium, and would not have bought the product had he known that the labeling
12  he relied on was false, misleading, deceptive and unfair.  Mr. Bell would purchase the Products
13  again in the future if Defendant changed the composition of the Products so that they conformed to
14  their "natural" labeling and marketing.

15  15. Defendant The Hain Celestial Group, Inc. is a Delaware Limited Liability
16  Corporation that has its principal place of business at 1111 Marcus Avenue #1, Lake Success, New
17  York 11042.

18  16. Defendant produces, markets and distributes various consumer skin care and
19  hygiene products in retail stores across the United States.  Among others, those products include
20  JĀSÖN® stick deodorants (the "Products").  Defendant knew that the labeling of the Products is
21  false and misleading to a reasonable consumer, because the Products contain tocopheryl acetate,
22  ethylhexylglycerin, and glycerin, which are inconsistent with the product labeling.

## FACTS COMMON TO ALL CAUSES OF ACTION

24  17. Consumers have become increasingly concerned about the effects of synthetics and
25  chemical ingredients in cosmetic products.  As a result, consumers are willing to pay, and have
26  paid, a premium for products labeled "natural" over ordinary products that contain synthetic
27  ingredients.

18. The FTC has warned marketers that the use of the term "natural" may be deceptive:

> Marketers that are using terms such as natural must ensure that they can substantiate whatever claims they are conveying to reasonable consumers. If reasonable consumers could interpret a natural claim as representing that a product contains no artificial ingredients, then the marketer must be able to substantiate that fact.[2]

19. Likewise, the Food and Drug Administration ("FDA") warns that any "natural" labeling on cosmetic products must be "truthful and not misleading."[3]

20. The JĀSÖN® brand is manufactured and marketed by Defendant and sold in drug, grocery, and retail stores nationwide. On its website, Defendant underscores the fact that "[T]hey began by making a pact to select only the purest, gentlest ingredients, and put them through a series of rigorous testing procedures that would reflect their high standards. Over the years these tests have grown more rigorous. Just because an ingredient is plant-based doesn't mean it should go into a personal care product."[4]

21. JĀSÖN® brand deodorant sticks come in 6 varieties, all of which contain tocopheryl acetate, ethylhexylglycerin, and glycerin JĀSÖN®'s Unscented (Men and Women), Purifying Tea Tree, Soothing Aloe Vera, Nourishing Apricot, Fragrance Free, and Calming Lavender Deodorant Sticks.

22. The front label of every JĀSÖN® brand deodorant sticks states prominently in lettering the words "Naturally Fresh," "Pure Natural Deodorant," or "Pure Natural Deodorant Stick."

---

[2] 75 Fed. Reg. 63552, 63586 (Oct. 15, 2010).
[3] FDA, Small Business & Homemade Cosmetics: Fact Sheet, *available at* http://www.fda.gov/Cosmetics/ResourcesForYou/Industry/ucm388736.htm#7.
[4] http://www.jason-personalcare.com/the-jason-story-2 (last visited July 20, 2017).



23. Some of the JĀSÖN® brand deodorant sticks products are labeled with the additional phrase "Natural Pioneer Since 1959."



24. The JĀSÖN® brand deodorant sticks products have been labeled "Naturally Fresh," "Pure Natural Deodorant," "Pure Natural Deodorant Stick," and/or "Natural Pioneer Since 1959," at all times during the last four years, at least.

25. Based on the language that appears on the front of each product, Plaintiffs reasonably believed that JĀSÖN® brand deodorant sticks contained only natural ingredients.

26. The phrase "Naturally Fresh," "Pure Natural Deodorant," "Pure Natural Deodorant Stick," and/or "Natural Pioneer Since 1959" is a representation to a reasonable consumer that JĀSÖN® brand deodorant sticks contain only natural ingredients. The phrase is misleading to a reasonable consumer because JĀSÖN® brand deodorant sticks actually contain unnatural and synthetic ingredients.

27. Based on the language that appears on the front of each product, Plaintiffs Pecanha and Bell reasonably believed that JĀSÖN® brand deodorant sticks contained only natural ingredients.

28. Defendant knew that consumers will pay more for a product labeled "natural," and intended to deceive Plaintiffs and putative class members by labeling JĀSÖN® brand deodorant sticks as purportedly natural products.

## CLASS ALLEGATIONS

29. Plaintiffs seek to represent a class defined as all persons in the United States who purchased the Products during the class period (the "Class"). Excluded from the Class are Defendant, its affiliates, employees, officers and directors, persons or entities that purchased the Products for resale, and the Judge(s) assigned to this case.

30. Plaintiffs Pecanha and Bell also seek to represent a Subclass of all persons in California who purchased the Products during the class period (the "California Subclass"). Excluded from the California Subclass are Defendant, its affiliates, employees, officers and directors, persons or entities that purchased the Products for resale, and the Judge(s) assigned to this case.

31. There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the putative classes

that predominate over questions that may affect individual Class members include, but are not limited to the following:

    a.    whether Defendant misrepresented material facts concerning the Products on the label of every product;

    b.    whether Defendant's conduct was unfair and/or deceptive;

    c.    whether Defendant has been unjustly enriched as a result of the unlawful, fraudulent, and unfair conduct alleged in this Complaint such that it would be inequitable for Defendant to retain the benefits conferred upon them by Plaintiffs and the classes;

    d.    whether Defendant breached express warranties to Plaintiffs and the classes;

    e.    whether Plaintiffs and the classes have sustained damages with respect to the common-law claims asserted, and if so, the proper measure of their damages.

32. Plaintiffs' claims are typical of those of other class members because Plaintiffs, like all members of the classes, purchased Defendant's Products bearing the natural representations and Plaintiffs sustained damages from Defendant's wrongful conduct.

33. Plaintiffs will fairly and adequately protect the interests of the classes and have retained counsel that is experienced in litigating complex class actions. Plaintiffs have no interests which conflict with those of the classes.

34. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

35. The prerequisites to maintaining a class action for equitable relief are met as Defendant has acted or refused to act on grounds generally applicable to the classes, thereby making appropriate equitable relief with respect to the classes as a whole.

36. The prosecution of separate actions by members of the classes would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For

example, one court might enjoin Defendant from performing the challenged acts, whereas another might not. Additionally, individual actions could be dispositive of the interests of the classes even where certain Class members are not parties to such actions.

## COUNT I
### Violation Of California's Consumers Legal Remedies Act ("CLRA"), California Civil Code §§ 1750, *et seq.*

37. Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

38. Plaintiffs Pecanha and Bell bring this claim individually and on behalf of the members of the proposed California Subclass against Defendant.

39. This cause of action is brought pursuant to California's Consumers Legal Remedies Act, Cal. Civ. Code §§ I750-I785 (the "CLRA").

40. Plaintiffs Pecanha and Bell and the other members of the California Subclass are "consumers," as the term is defined by California Civil Code § 1761(d), because they bought the Products for personal, family, or household purposes.

41. Plaintiffs Pecanha and Bell, the other members of the California Subclass, and Defendant have engaged in "transactions," as that term is defined by California Civil Code § 1761(e).

42. The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA, and the conduct was undertaken by Defendant in transactions intended to result in, and which did result in, the sale of goods to consumers.

43. As alleged more fully above, Defendant has violated the CLRA by falsely representing to Plaintiffs Pecanha and Bell and the other members of the California Subclass that the Products are "natural" when in fact they are made with synthetic ingredients.

44. As a result of engaging in such conduct, Defendant has violated California Civil Code § 1770(a)(5), (a)(7) and (a)(9).

45. On May 30, 2017, Plaintiff Bell mailed a notice letter to Defendant consistent with California Civil Code § 1782(a), and Defendant received the letter on June 16, 2017. The letter was sent on behalf of Bell and all other persons similarly situated.

46. Accordingly, pursuant to California Civil Code § 1780(a)(3), Plaintiffs Pecanha and Bell, on behalf of themselves and all other members of the California Subclass, seeks injunctive relief, compensatory damages, punitive damages, and restitution of any ill-gotten gains due to Defendant's acts and practices.

**COUNT II**
**Violation Of California's Unfair Competition Law ("UCL"),**
**California Business & Professions Code §§ 17200, *et seq.***

47. Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

48. Plaintiffs Pecanha and Bell bring this claim individually and on behalf of the members of the proposed California Subclass against Defendant.

49. Defendant is subject to California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq*. The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising …."

50. Defendant violated the "unlawful" prong of the UCL by violating the CLRA and the FAL, as alleged herein.

51. Defendant's misrepresentations and other conduct, described herein, violated the "unfair" prong of the UCL in that their conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct outweighs any alleged benefits.

52. Defendant violated the "fraudulent" prong of the UCL by misrepresenting that the Products are "natural" when, in fact, they are made with synthetic ingredients.

53. Plaintiffs Pecanha and Bell and the California Subclass lost money or property as a result of Defendant's UCL violations because: because: (a) they would not have purchased the

1  Products on the same terms if they knew that the Products were made with unnatural and synthetic
2  ingredients (b) they paid a substantial price premium compared to other skin care and hygiene
3  products due to Defendant's misrepresentations; and (c) the Products do not have the
4  characteristics, uses, or benefits as promised.

**COUNT III**
**Violation Of California's False Advertising Law ("FAL"),**
**California Business & Professions Code §§ 17500, *et seq.***

54. Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

55. Plaintiffs Pecanha and Bell bring this claim individually and on behalf of the members of the proposed California Subclass against Defendant.

56. California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*, makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, ... in any advertising device ... or in any other manner or means whatever, including over the Internet, any statement, concerning ... personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

57. Defendant committed acts of false advertising, as defined by §§17500, *et seq.*, by misrepresenting that the Products are "natural" when they are not.

58. Defendant knew or should have known through the exercise of reasonable care that their representations about the Products were untrue and misleading.

59. Defendant's actions in violation of §§ 17500, *et seq.* were false and misleading such that the general public is and was likely to be deceived. Plaintiffs Pecanha and Bell and the California Subclass lost money or property as a result of Defendant's FAL violations because: (a) they would not have purchased the Products on the same terms if they knew that the Products were made with unnatural and synthetic ingredients; (b) they paid a substantial price premium compared

to other skin care and hygiene products due to Defendant's misrepresentations; and (c) the Products do not have the characteristics, uses, or benefits as promised.

## COUNT IV
### Breach of Express Warranty

60. Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

61. Plaintiffs bring this claim individually and on behalf of the proposed Class, California Subclass against Defendant.

62. Defendant, as the designer, manufacturer, marketer, distributor, and/or seller, expressly warranted that the Products are "natural."

63. Defendant's express warranties, and its affirmations of fact and promises made to Plaintiffs and the Class regarding the Products, became part of the basis of the bargain between Defendant and Plaintiffs and the Class, thereby creating an express warranty that the Products would conform to those affirmations of fact, representations, promises, and descriptions.

64. The Products do not conform to the express warranty because they contain ingredients that are unnatural and synthetic.

65. As a direct and proximate cause of Defendant's breach of express warranty, Plaintiffs and Class members have been injured and harmed because: (a) they would not have purchased the Products on the same terms if they knew the truth about the Products' unnatural ingredients; (b) they paid a substantial price premium based on Defendant's express warranties; and (c) the Products do not have the characteristics, uses, or benefits as promised.

66. On May 30, 2017, Plaintiff Bell mailed a notice letter to Defendant consistent with Cal. Com. Code § 2607(3)(a) and U.C.C. 2-607(3)(A), and Defendant received the letter on June 16, 2017. The letter was sent on behalf of Bell and all other persons similarly situated.

## COUNT V
### Unjust Enrichment

67. Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

68. Plaintiffs bring this claim individually and on behalf of the proposed Class, California Subclass against Defendant.

69. Plaintiffs and class members conferred benefits on Defendant by purchasing the Products.

70. Defendant has been unjustly enriched in retaining the revenues derived from Plaintiffs' and class members' purchases of the Products. Retention of those monies under these circumstances is unjust and inequitable because of Defendant's misrepresentations about the Products, which caused injuries to Plaintiffs and members of the classes because they would not have purchased the Products if the true facts had been known.

71. Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiffs and Class members is unjust and inequitable, Defendant must pay restitution to Plaintiffs and Class members for their unjust enrichment, as ordered by the Court.

## COUNT VI
### Fraud

72. Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

73. Plaintiffs bring this claim individually and on behalf of the proposed Class, California Subclass against Defendant.

74. As discussed above, Defendant provided Plaintiffs and Class members with false or misleading material information about the Products by representing that they are "natural." Defendant made that misrepresentation knowing it was false.

75. Defendant's misrepresentations, upon which Plaintiffs and class members reasonably and justifiably relied, were intended to induce and actually induced Plaintiffs and class members to purchase the Products.

76. Defendant's fraudulent actions harmed Plaintiffs and class members, who are entitled to damages and other legal and equitable relief as a result.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs demand judgment on behalf of themselves and members of the Class, California Subclass as follows:

A. For an order certifying the nationwide Class and California Subclass under Rule 23 of the Federal Rules of Civil Procedure; naming Plaintiffs as Class and Subclass representatives; and naming Plaintiffs' attorneys as Class Counsel representing the Class and Subclass members;

B. For an order finding in favor of Plaintiffs, the nationwide Class and the California Subclass on all counts asserted herein;

C. For an order awarding statutory, compensatory, treble, and punitive damages in amounts to be determined by the Court and/or jury;

D. For injunctive relief enjoining the illegal acts detailed herein;

E. For prejudgment interest on all amounts awarded;

F. For an order of restitution and all other forms of equitable monetary relief;

G. For an order awarding Plaintiffs their reasonable attorneys' fees and expenses and costs of suit.

**JURY TRIAL DEMANDED**

Plaintiffs demand a trial by jury on all claims so triable.

Dated: August 8, 2017                    Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:       */s/ L. Timothy Fisher*
              L. Timothy Fisher

L. Timothy Fisher (State Bar No. 191626)
Joel D. Smith (State Bar No. 244902)
Yeremey O. Krivoshey (State Bar No. 295032)
1990 North California Blvd., Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
Email: ltfisher@bursor.com
            jsmith@bursor.com
            ykrivoshey@bursor.com

Dated: August 8, 2017             **NATHAN & ASSOCIATES, APC**

By:      */s/ Reuben D. Nathan*
                  Reuben D. Nathan

Reuben D. Nathan (State Bar No. 208436)
600 W. Broadway, Suite 700
San Diego, California 92101
Telephone: (619)272-7014
Facsimile:  (619)330-1819
E-Mail: rnathan@nathanlawpractice.com

Attorneys for Plaintiffs

**CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)**

I, L. Timothy Fisher, declare as follows:

1. I am counsel for Plaintiffs, and I am a partner at Bursor & Fisher, P.A. I make this declaration to the best of my knowledge, information, and belief of the facts stated herein.

2. The complaint filed in this action is filed in the proper place for trial because defendant Hain Celestial Group, Inc. does substantial business in this District including the sale of the products at issue in this case.

I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct, executed on August 4, 2017 at Walnut Creek, California.

L. Timothy Fisher

VENUE DECLARATION