1

**JENNER & BLOCK LLP**
Kenneth K. Lee (Cal. Bar No. 264296)
klee@jenner.com
Alexander M. Smith (Cal. Bar No. 295187)
asmith@jenner.com
633 West 5th Street, Suite 3600
Los Angeles, CA  90071-2054
Phone:      (213) 239-5100
Facsimile:  (213) 239-5199

2

3

4

5

6

**JENNER & BLOCK LLP**
Dean N. Panos (admitted *pro hac vice*)
dpanos@jenner.com
353 N. Clark Street
Chicago, IL 60654-3456
Phone:      (312) 222-9350
Facsimile:  (312) 527-0484

7

8

9

10

11

Attorneys for Defendant
The Hain Celestial Group, Inc.

12

13

UNITED STATES DISTRICT COURT

14

NORTHERN DISTRICT OF CALIFORNIA

15

16

MAKINDE PECANHA and SHAUN RAY BELL,
on behalf of themselves and all others similarly
situated,

17

18

                    Plaintiffs,

19

          v.

20

THE HAIN CELESTIAL GROUP, INC.,

21

                    Defendant.

22

23

Case No. 3:17-cv-04517 EMC

The Honorable Edward M. Chen

**NOTICE OF MOTION AND MOTION TO
DISMISS CLASS ACTION COMPLAINT
OR, IN THE ALTERNATIVE, TO STAY;
MEMORANDUM OF POINTS AND
AUTHORITIES**

Hearing Date:  December 7, 2017
Hearing Time:  1:30 p.m.
Courtroom:      5 (17th Floor, San Francisco)

24

25

26

27

28

1

## NOTICE OF MOTION

2       PLEASE TAKE NOTICE that, on December 7, 2017, at 1:30 pm, or as soon thereafter as the Court

3   is available, in Courtroom 5 of the federal courthouse located at 450 Golden Gate Avenue, San Francisco,

4   California 94102, Defendant The Hain Celestial Group, Inc. ("Hain Celestial" or "JĀSÖN")[*] will and

5   hereby does move this Court to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(6)

6   or, in the alternative, to stay the case, on the grounds that: (1) Plaintiffs' Complaint fails to state a plausible

7   claim that consumers would be misled by the term "natural" found on JĀSÖN deodorants; (2) the Court

8   should stay this case in deference to the FDA under the doctrine of primary jurisdiction; (3) Plaintiffs'

9   individual claims fail on their own; (4) Plaintiffs lack standing to assert claims on behalf of putative class

10  members outside of California; and (5) Plaintiffs lack standing to seek injunctive relief.

11      This Motion is based on this Notice of Motion and Motion, the following Memorandum of Points

12  and Authorities, the concurrently-filed Request for Judicial Notice and Proposed Order, any additional

13  briefing on this subject, and the evidence and arguments that will be presented to the Court at the hearing

14  on this matter.

15

16   Dated:  October 6, 2017                                    JENNER & BLOCK LLP

17                                                             By: /s/  Kenneth K. Lee
                                                                   Kenneth K. Lee
18
                                                              Attorneys for Defendant
19                                                            The Hain Celestial Group, Inc.

20

21

22

23

24

25

26

27  [*] Plaintiffs incorrectly name Hain Celestial as the defendant.  JĀSÖN Natural Products, Inc. — a subsidiary
    of Hain Celestial — manufactures the products at issue, and JĀSÖN and Hain Celestial are separate
28  companies that are incorporated in different states.

1

## **TABLE OF CONTENTS**

2  INTRODUCTION ....................................................................................................................1

3  FACTUAL AND PROCEDURAL BACKGROUND....................................................................3

4  ARGUMENT ..........................................................................................................................5

5
6  I.  This Court Should Dismiss Plaintiffs' Lawsuit Because Plaintiffs Do Not Plausibly
      Allege That the References to "Natural" Are Likely to Deceive a Reasonable
      Consumer ....................................................................................................................5

7
8      A.  The JĀSÖN packaging "as a whole," as well as basic common sense,
          makes clear that "natural" refers to the absence of the identified common
9          chemicals ............................................................................................................6

10     B.  Any mistaken belief over whether deodorants are completely free of any
          chemicals whatsoever would be dispelled by reviewing the packaging as
11         a whole....................................................................................................10

12  II.  Alternatively, This Court Should Stay This Lawsuit in Deference to the FDA's
       Ongoing Regulatory Review of the Use of the Term "Natural."............................................12

13
14  III.  Plaintiffs' Claims Also Fail for Independent, Claim-Specific Reasons .................................14

15     A.  Plaintiffs' UCL, FAL, CLRA, and fraud claims do not satisfy Rule 9(b)............15

16     B.  Plaintiffs fail to state a claim for breach of express warranty...............................15

17     C.  Plaintiffs' unjust enrichment claim also fails........................................................16

18  IV.  Plaintiffs Lack Standing to Assert Common-Law Claims on Behalf of a Nationwide
       Class ..........................................................................................................17

19
20  V.  Plaintiffs Lack Standing to Seek Injunctive Relief .......................................................18

21  CONCLUSION........................................................................................................20

22

23

24

25

26

27

28

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Anderson v. Hain Celestial Grp., Inc.*,
   87 F. Supp. 3d 1226 (N.D. Cal. 2015) ................................................................19

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).................................................................................1, 5, 7

*Astiana v. Hain Celestial Grp., Inc.*,
   783 F.3d 753 (9th Cir. 2015) ...............................................................................14

*Bailey v. Kind, LLC*,
   No. 16-168, 2016 WL 3456981 (C.D. Cal. June 16, 2016) ................................15

*Barrett v. Milwaukee Elec. Tool, Inc.*,
   No. 14-1804, 2016 WL 4595947 (S.D. Cal. Jan. 26, 2016) ..................................8

*Bates v. United Parcel Serv., Inc.*,
   511 F.3d 974 (9th Cir. 2007) ...............................................................................18

*Bober v. Glaxo Wellcome PLC*,
   246 F.3d 934 (7th Cir. 2001) ...............................................................................12

*Branch v. Tunnell*,
   14 F.3d 449 (9th Cir. 1994) ...................................................................................4

*Clark v. Time Warner Cable*,
   523 F.3d 1110 (9th Cir. 2008) .............................................................................13

*Corcoran v. CVS Health Corp.*,
   No. 15-3504, 2016 WL 4080124 (N.D. Cal. July 29, 2016) ...............................17

*Davenport v. Litton Loan Servicing, LP*,
   725 F. Supp. 2d 862 (N.D. Cal. 2010) ..................................................................5

*Fenerjian v. Nongshim Co.*,
   72 F. Supp. 3d 1058 (N.D. Cal. 2014) ................................................................17

*Fink v. Time Warner Cable*,
   714 F.3d 739 (2d Cir. 2013).................................................................................7

*Freeman v. Time, Inc.*,
   68 F.3d 285 (9th Cir. 1995) ...............................................................................6, 7

*Galbraith v. County of Santa Clara,*
  307 F.3d 1119 (9th Cir. 2002) ................................................................4

*Garrison v. Whole Foods Mkt. Grp., Inc.,*
  No. 13-5222, 2014 WL 2451290 (N.D. Cal. June 2, 2014).....................18

*Goldman v. Bayer AG,*
  No. 17-647, 2017 WL 3168525 (N.D. Cal. July 26, 2017) .....................11

*Hairston v. S. Beach Beverage Co., Inc.,*
  No. 12-1429, 2012 WL 1893818 (C.D. Cal. May 18, 2012) ......................6

*Henderson v. Gruma Corp,*
  No. 10-4173, 2011 WL 1362188 (C.D. Cal. Apr. 11, 2011) ..................7, 8

*Hill v. Roll Int'l Corp.,*
  195 Cal. App. 4th 1295 (2011) ................................................................6

*Hodgers-Durgin v. de la Vina,*
  199 F.3d 1037 (9th Cir. 1999) ...............................................................18

*In re 100% Grated Parmesan Cheese Mktg. & Sales Practices Litig.,*
  No. 16-5802, 2017 WL 3642076 (N.D. Ill. Aug. 24, 2017) ..........9, 11, 12

*In re Carrier IQ, Inc., Consumer Privacy Litig.,*
  78 F. Supp. 3d 1051 (N.D. Cal. 2015) .....................................................17

*In re Countrywide Fin. Corp. Secs. Litig.,*
  588 F. Supp. 2d 1132 (C.D. Cal. 2008) ...................................................15

*In re Ditropan XL Antitrust Litig.,*
  529 F. Supp. 2d 1098 (N.D. Cal. 2007) ...................................................17

*In re Flash Memory Antitrust Litig.,*
  643 F. Supp. 2d 1133 (N.D. Cal. 2009) ..............................................17, 18

*In re Honest Marketing Litig,*
  No. 16-01125 (S.D.N.Y.)..........................................................................6

*Kane v. Chobani, LLC,*
  645 F. App'x 593 (9th Cir. 2016) .......................................................13, 14

*Kearns v. Ford Motor Co.,*
  567 F.3d 1120 (9th Cir. 2009) ................................................................15

*Kelly v. Cape Cod Potato Chip Co.,*
  81 F. Supp. 3d 754 (W.D. Mo. 2015) ........................................................9

*Khasin v. R. C. Bigelow, Inc.*,
    No. 12-2204, 2016 WL 4502500 (N.D. Cal. Aug. 29, 2016) ............................................. 19

*Lavie v. Procter & Gamble Co.*,
    105 Cal. App. 4th 496 (2003) ............................................................................................ 5, 6

*Letizia v. Facebook Inc.*,
    --- F. Supp. 3d ----, 2017 WL 3006950 (N.D. Cal. 2017) .................................................. 15

*Mains v. Whole Foods Market, Inc.*,
    No. 12-5652, 2016 WL 5791414 (N.D. Cal. Apr. 18, 2016) ............................................... 14

*Manchouck v. Mondelēz Int'l Inc.*,
    No. 13-2148, 2013 WL 5400285 (N.D. Cal. Sept. 26, 2013) ................................................ 4

*Marder v. Lopez*,
    450 F.3d 445 (9th Cir. 2006) ................................................................................................. 4

*Marilao v. McDonald's Corp.*,
    632 F. Supp. 2d 1008 (S.D. Cal. 2009) ............................................................................... 16

*McKinnis v. Kellogg USA*,
    No. 07-2611, 2007 WL 4766060 (C.D. Cal. Sept. 19, 2007) .............................................. 16

*Morgan v. Wallaby Yogurt Co.*,
    No. 13-296, 2014 WL 1017879 (N.D. Cal. Mar. 13, 2014) ............................................ 18, 19

*Nabors v. Google, Inc.*,
    No. 10-3897, 2011 WL 3861893 (N.D. Cal. Aug. 30, 2011) .............................................. 16

*Pelayo v. Nestle USA, Inc.*,
    989 F. Supp. 2d 973 (C.D. Cal. 2013) ............................................................................... 8, 9

*Rapoport-Hecht v. Seventh Generation, Inc.*,
    No. 14-9087 (S.D.N.Y.) ......................................................................................................... 6

*Romero v. Flowers Bakeries, LLC*,
    No. 14-5189, 2015 WL 2125004 (N.D. Cal. May 6, 2015) ................................................. 19

*Schneider v. Chipotle Mexican Grill, Inc.*,
    No. 16-2200, 2016 WL 6563348 (N.D. Cal. Nov. 4, 2016) ............................................... 18

*Stuart v. Cadbury Adams USA, LLC*,
    458 F. App'x 689 (9th Cir. 2011) ...................................................................................... 7, 9

*Syntek Semiconductor Co. v. Microchip Tech. Inc.*,
    307 F.3d 775 (9th Cir. 2002) ............................................................................................... 12

*United Energy Trading, LLC v. Pac. Gas & Elec. Co.*,
 146 F. Supp. 3d 1122 (N.D. Cal. 2015) ..............................................................................5

*United States v. W. Pac. R.R. Co.*,
 352 U.S. 59 (1956) ..............................................................................................................12

*Veal v. Citrus World, Inc.*,
 No. 12-801, 2013 WL 120761 (N.D. Ala. Jan. 8, 2013) ......................................................9

*Videtto v. Kellogg USA*,
 No. 08-1324, 2009 WL 1439086 (E.D. Cal. May 21, 2009) ................................................8

*Viggiano v. Hansen Natural Corp.*,
 944 F. Supp. 2d 877 (C.D. Cal. 2013) ...............................................................................16

*Viggiano v. Johnson & Johnson*,
 No. 14-7250, 2016 WL 5110500 (C.D. Cal. June 21, 2016) ..............................................14

*Vincent v. People Against Dirty*,
 No. 16-6936 (S.D.N.Y.) ........................................................................................................6

*Werbel v. Pepsico, Inc.*,
 No. 09-4456, 2010 WL 2673860 (N.D. Cal. July 2, 2010) ..................................................8

*Workman v. Plum, Inc.*,
 141 F. Supp. 3d 1032 (N.D. Cal. 2015) .......................................................................10, 12

**STATUTES**

Consumers Legal Remedies Acct, Cal. Civ. Code §§ 1750 *et seq.* ............................................2, 5, 15, 17

False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq.* ............................................2, 5, 15, 17

Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301 *et seq.* ...........................................................14

Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.* ..................................................passim

**OTHER AUTHORITIES**

21 C.F.R § 182.1320 ...............................................................................................................................14

FDA, *Use of the Term "Natural" in the Labeling of Human Food Products; Request for Information and Comments,* 80 Fed. Reg. 69905 (Nov. 12, 2015)..............................................................13

Fed. R. Civ. P. 9(b) ............................................................................................................................2, 15

H.R. Rep. No. 115-232 (July 17, 2017) ...................................................................................................13

National Organic Standards Board, *Formal Recommendation to National Organic Program to Remove Glycerin from § 205.605(b)* (April 2015) ............................................................2, 15

# INTRODUCTION

On its website and elsewhere, JĀSÖN prominently touts its Code of Honor, which affirms that its products are made with "safe, gentle and effective ingredients." Consistent with that credo, JĀSÖN makes a line of deodorant sticks that do not contain harsh chemicals commonly found in other deodorants. As the front of the packaging prominently declares, there is "NO ALUMINUM, PARABENS, PHTHALATES, OR PROPYLENE GLYCOL" in those deodorant sticks. And right next to that disclosure were statements pointing out that the deodorants were "Pure Natural" or "Naturally Fresh" in light of the absence of those common chemicals.[1]

Plaintiffs Makinde Pecanha and Shaun Ray Bell do not dispute that JĀSÖN deodorant products are free from aluminum, parabens, phthalates, and propylene glycol. Nonetheless, Plaintiffs filed this putative class action lawsuit claiming deception. By focusing solely on the word "natural" and ignoring everything else — including the packaging's other disclosures and basic common sense — Plaintiffs claim that they believed that these packaged deodorants did not have any artificial or synthetic ingredients whatsoever. They then claim that they were surprised to learn after reading the ingredient list on the packaging that these deodorants include glycerin, tocopherol acetate, and ethylhexylglycerin, which they assert are synthetic. Plaintiffs' theory of the case does not pass the smell test and should be dismissed.

First, Plaintiffs have not plausibly alleged that a reasonable consumer would be misled by the use of the single term "natural" on JĀSÖN deodorants. The Ninth Circuit has held that courts must review the challenged packaging "as a whole" to determine whether it is misleading. Plaintiffs cannot fixate on a single word ("natural") and put blinders on to the rest of the packaging. When viewed "as a whole," the reference to "natural" or "naturally" refers to the fact that there is "no aluminum, parabens, phthalates, or propylene glycol" in the deodorants. Nor can Plaintiffs ignore "common sense," which the Supreme Court in *Ashcroft v. Iqbal* directed lower courts to apply to weed out implausible cases at the pleading stage. It defies common sense that a reasonable consumer would think that a mass-manufactured deodorant designed to ward off smell from sweat was completely devoid of any synthetic ingredients. Notably, the

---

[1] Prior to the filing of this lawsuit, JĀSÖN decided to remove references to "natural" in all of its products.

products were labeled as "natural" — not "all natural" or "100% natural" — which is a key distinction recognized by many courts.

Second, to the extent that Plaintiffs were allegedly confused by the use of the term "natural" in the context of deodorants, federal courts have consistently held that consumers are then put on notice that they should review the entire packaging, including the ingredient list, to clarify any ambiguity. Doing so would have dispelled any ambiguity about the word "natural" in the context of packaged deodorants because the ingredient list discloses the ingredients that Plaintiffs challenge. Indeed, that is the only reason why Plaintiffs know that the deodorants contain those challenged ingredients.

Third, this Court has the option of invoking the doctrine of primary jurisdiction to stay this case while the FDA engages in regulatory review of the use of the term "natural." In light of the FDA's current regulatory activity over the term "natural," this Court should let the FDA address this issue in the first instance.

Fourth, Plaintiffs' various individual claims fail for a variety of reasons. Their claims under the Unfair Competition Law (UCL), False Advertising Law (FAL), and Consumer Legal Remedies Act (CLRA), and their claim for common-law fraud fail because Plaintiffs do not allege sufficient or particularized facts to establish that they paid a price premium in reliance on the alleged misrepresentations, as required by Rule 9(b). Their breach of express warranty claim also fails because Plaintiffs neither identify the exact terms of the warranty nor plausibly allege that JĀSÖN breached any such warranty. And Plaintiffs' unjust enrichment claim fails because Plaintiffs have not plausibly alleged that JĀSÖN was unjustly enriched at their expense.

Finally, this Court should dismiss Plaintiffs' claims on behalf of a nationwide class and their request for injunctive relief for lack of standing. Both Plaintiffs reside in California and allegedly purchased the JĀSÖN deodorant products in California. As this Court has made clear in other cases, they lack standing to sue under the laws of states other than California. Plaintiffs likewise lack standing to seek injunctive relief because they no longer face any reasonable probability of future harm: they now know that the JĀSÖN deodorant products contain allegedly "unnatural" and "synthetic" ingredients that they seek to avoid (and, in any event, the references to "natural" were removed prior to the filing of the lawsuit).

## FACTUAL AND PROCEDURAL BACKGROUND

JĀSÖN makes a line of personal care products that includes several varieties of deodorant, such as "Purifying Tea Tree," "Soothing Aloe Vera," Nourishing Apricot," and "Calming Lavender."  Compl. ¶ 4. The products are shelf-stable deodorant sticks and come in plastic containers.  As noted in the complaint, JĀSÖN prominently touts its Code of Honor stating that its products are made with "safe, gentle and effective ingredients."  *Id.* ¶ 3.  In keeping with that Code of Honor, the front packaging of the JĀSÖN deodorant products at one point stated that they are "Pure Natural" or "Naturally Fresh" deodorants that contain "[n]o aluminum, parabens, phthalates, or propylene glycol," all of which are common ingredients in stick deodorant.  *See id.* ¶¶ 3, 22-23.  Those statements appeared on labels like the one below:



MOTION TO DISMISS CLASS ACTION COMPLAINT OR, IN THE ALTERNATIVE, TO STAY

1   Compl. ¶ 22.  The back of the deodorant container, in accordance with FDA regulations, lists all of the

2   ingredients, including the challenged ingredients:

3

4   INGREDIENTS: Propanediol, Aqua (Water), Glycerin,
    Sodium Stearate, Zinc Ricinoleate, Polyglyceryl-3 Caprate,
5   Prunus Armeniaca (Apricot) Kernel Oil, Citrus Grandis
    (Grapefruit) Seed Extract, Allantoin,
6   Behenyl Alcohol, Ethylhexylglycer-
    in, Glyceryl Stearate, Silica,
7   Sodium Bicarbonate, Sucrose
    Cocoate, Tocopheryl Acetate, Zea
8   Mays (Corn) Starch, Benzyl
    Salicylate, Fragrance (Parfum)
9

10

11  RJN Ex. 1.[2]

12          Plaintiffs allege that JĀSÖN's use of the terms "Naturally Fresh," "Pure Natural Deodorant," "Pure

13  Natural Deodorant Stick," and "Natural Pioneer Since 1959" is misleading because the JĀSÖN deodorant

14  products contain tocopherol acetate, glycerin, and ethylhexylglycerin, which Plaintiffs characterize as

15  "unnatural and/or synthetic ingredients."[3]  Compl. ¶¶ 7-8.  They further allege that the inclusion of these

16

17  _____

18  [2] In evaluating a motion to dismiss, this Court is entitled to consider "evidence on which the complaint
    'necessarily relies,'" even if the evidence is not physically attached to the complaint.  *Marder v. Lopez*,
19  450 F.3d 445, 448 (9th Cir. 2006); see also *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled
    on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002) (holding that a
20  court ruling on a motion to dismiss may consider "documents whose contents are alleged in the complaint
    and whose authenticity no party questions, but which are not physically attached to the pleading").  Thus,
21  this Court may properly take judicial notice of the labeling of the JĀSÖN deodorant products, as these
    labels are referenced in the complaint and serve as the basis for Plaintiffs' claims.  *See, e.g.*, *Manchouck v.
22  Mondelēz Int'l Inc.*, No. 13-2148, 2013 WL 5400285, at *3 (N.D. Cal. Sept. 26, 2013) (taking judicial
    notice of cookie packaging "as the contents of these documents are 'not subject to reasonable dispute,' and
23  are incorporated into the amended complaint by reference").

24

25  [3] Although Plaintiffs characterize glycerin as a "synthetic" ingredient, glycerin exists in both organic and
    synthetic forms.  For instance, in April 2015, the National Organic Standards Board recommended that the
26  USDA discontinue classifying glycerin as a "synthetic" substance due to the widespread availability of
    "organically produced glycerin."  RJN Ex. 11.  Plaintiffs do not allege *any* facts suggesting that JĀSÖN
27  uses synthetic, as opposed to organic, glycerin in the JĀSÖN deodorant products.

28

1  ingredients misled them because they understood the term "natural" to mean that JĀSÖN deodorant sticks

2  did not contain any "synthetic chemicals" at all.  *Id.* ¶¶ 13-14.

3          On August 8, 2017, Plaintiffs filed this lawsuit on behalf of themselves and a putative nationwide

4  class of individuals who purchased JĀSÖN deodorant products, as well as a subclass of California residents

5  who purchased JĀSÖN deodorant products.  *Id.* ¶¶ 29-30.  Plaintiffs assert claims for breach of express

6  warranty, unjust enrichment, and common-law fraud on behalf of both the nationwide class and the

7  California subclass.  *Id.* ¶¶ 60-76.  In addition, Plaintiffs assert claims under three California statutes on

8  behalf of the California subclass, including a claim under the UCL, Cal. Bus. & Prof. Code §§ 17200 *et*

9  *seq.*, a claim under the FAL, Cal. Bus. & Prof. Code §§ 17500 *et seq.*, and a claim under the CLRA, Cal.

10  Civ. Code §§ 1750 *et seq.*  Compl. ¶¶ 37-59.  Plaintiffs seek a variety of remedies on behalf of the putative

11  class, including damages, restitution, and injunctive relief.  *See id.* at 14 (Prayer for Relief).

12                                      **<u>ARGUMENT</u>**

13          To survive a motion to dismiss, "a complaint must have sufficient factual allegations to 'state a

14  claim to relief that is plausible on its face.'"  *United Energy Trading, LLC v. Pac. Gas & Elec. Co.*, 146 F.

15  Supp. 3d 1122, 1132 (N.D. Cal. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "[W]here

16  the well-pleaded facts do not permit the court to infer more than a mere *possibility* of misconduct, the

17  complaint has not shown the pleader is entitled to relief."  *Davenport v. Litton Loan Servicing, LP*, 725 F.

18  Supp. 2d 862, 872 (N.D. Cal. 2010).  Rather, the pleader must "allege more by way of factual content to

19  'nudg[e]' his claim" of unlawful action "'across the line from conceivable to plausible.'"  *Iqbal*, 556 U.S.

20  at 683 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

21  **I.      This Court Should Dismiss Plaintiffs' Lawsuit Because Plaintiffs Do Not Plausibly Allege**

22  **That the References to "Natural" Are Likely to Deceive a Reasonable Consumer.**

23          Under California's consumer protection statutes, a labeling claim is actionable only if it is "likely

24  to deceive" a reasonable consumer.  *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003).

25  "'Likely to deceive' implies more than a mere possibility that the advertisement might conceivably be

26  misunderstood by some few consumers viewing it in an unreasonable manner."  *Id.*  Rather, the statement

27  must be "such that *it is probable that a significant portion of the general consuming public or of targeted*

28

*consumers*, *acting reasonably in the circumstances, could be misled*." *Id.* (emphasis added).  As one California appellate court put it, "the standard is not a least sophisticated consumer," but rather a reasonable one. *Hill v. Roll Int'l Corp.*, 195 Cal. App. 4th 1295, 1304 (2011) (citation omitted).  "[W]here a Court can conclude as a matter of law that members of the public are not likely to be deceived by the product packaging, dismissal is appropriate." *Hairston v. S. Beach Beverage Co., Inc.*, No. 12-1429, 2012 WL 1893818, at *4 (C.D. Cal. May 18, 2012).

### A.     The JĀSÖN packaging "as a whole," as well as basic common sense, makes clear that "natural" refers to the absence of the identified common chemicals.

The Ninth Circuit has held that a court must evaluate whether a label is false or deceptive by considering the packaging "as a whole," instead of evaluating a single statement in isolation.  *Freeman v. Time, Inc.*, 68 F.3d 285, 290 (9th Cir. 1995) (affirming dismissal of false advertising lawsuit and reasoning that the plaintiff could have "dispelled" any "ambiguity" by considering the "promotion as a whole").

Here, Plaintiffs fixate on a single word — "natural" — in claiming that they thought every single ingredient in the deodorant sticks was neither artificial nor synthetic.  But the products were never labeled as "all natural" or "100% natural," and the packaging never stated that product contained only natural ingredients.  Federal courts have recognized the difference between "all natural" and "100% natural" (which arguably suggest that every ingredient is natural) and "natural" (which undoubtedly does not do so).  In approving class settlements involving "100% natural" and "all natural" claims on personal care and household products, three federal courts recently issued orders in which the defendant companies would replace the term "100% natural" or "all natural" with the term "natural" on their products to underscore to consumers that there still may be some synthetic ingredients in those products.  *See, e.g., In re Honest Marketing Litig*, No. 16-1125 (S.D.N.Y.) (RJN Ex. 2-3); *Vincent v. People Against Dirty*, No. 16-6936 (S.D.N.Y.) (RJN Ex. 4-5); *Rapoport-Hecht v. Seventh Generation, Inc.*, No. 14-9087 (S.D.N.Y.) (RJN Ex. 6-7).

Plaintiffs also completely ignore the rest of the packaging — including the prominent disclosure on the front of the packaging just below the term "Pure Natural" or "Naturally Fresh": "**NO ALUMINUM, PARABENS, PHTHALATES, OR PROPYLENE GLYCOL**" — that make clear the meaning of the

word "natural" in the context of these deodorants.  In other words, a reasonable reading of the packaging "as a whole" makes clear that the word "natural" refers to the fact that the products do not contain the identified harsh chemicals that are typically found in deodorants.  *Freeman*, 68 F.3d at 290.  Indeed, that message is consistent with the JĀSÖN Code of Honor cited by Plaintiffs in the complaint: JĀSÖN products are made with "safe, gentle and effective ingredients," not harsh chemicals.

In analogous cases, courts have dismissed false advertising cases where the plaintiffs had focused on a single word or phrase in isolation (and ignored other phrases located close to the challenged phrase).  *See, e.g., id.* (requiring the entire advertisement to be reviewed "as a whole" and rejecting plaintiff's focus on only one phrase in the advertisement); *Henderson v. Gruma Corp*, No. 10-4173, 2011 WL 1362188, at *12 (C.D. Cal. Apr. 11, 2011) (ruling that the challenged statement "With Garden Vegetables" on a guacamole dip was "accurate in the context of the label *as a whole*") (emphasis added); *Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013) ("[I]n determining whether a reasonable consumer would have been misled by a particular advertisement, *context is crucial*.") (emphasis added).

Moreover, basic common sense would inform a reasonable consumer that deodorants designed to fight smelly scents, manufactured in factories, and sold on supermarket shelves likely have some synthetic chemical ingredients.  The Supreme Court has directed district courts to "draw on . . . common sense" in "[d]etermining whether a complaint states a plausible claim for relief."  *Iqbal*, 556 U.S. at 679.  Consistent with that instruction, the Ninth Circuit has held that false advertising lawsuits must be dismissed where the plaintiff's interpretation of a challenged labeling statement "def[ies] common sense."  *Stuart v. Cadbury Adams USA, LLC*, 458 F. App'x 689, 690 (9th Cir. 2011).  The plaintiff there latched onto to the phrase "whitens teeth" in an advertisement for Trident White gum and insisted that it misled consumers into believing that they could "whiten" their teeth solely by chewing that gum.  The Ninth Circuit affirmed the dismissal of the complaint, reasoning that the plaintiff's theory of the case "def[ied] common sense" because only an "unreasonable consumer would be confused or deceived by Cadbury's failure to clarify that Trident White gum works only if consumers continue to brush and floss regularly." *Id.* at 691.  In other words, context matters — a reasonable consumer understands that a *gum* by itself cannot "whiten teeth," even if the company did not literally spell it out.  Likewise here, context matters — and a reasonable

consumer understands that a mass-produced deodorant encased in a plastic container and sold in supermarkets, by its very nature, likely has some synthetic ingredients.

Following the "common sense" guidance provided by the Supreme Court and the Ninth Circuit, numerous district courts in the Ninth Circuit have dismissed false advertising lawsuits at the pleading stage, where the plaintiffs have adopted an absolutist or implausible reading of a single phrase in a product advertisement. For instance, in *Barrett v. Milwaukee Electric Tool, Inc.*, the plaintiff alleged that the defendant tool manufacturer misrepresented its hammers as "100% Handcrafted," even though the defendant's production process was largely mechanized. No. 14-1804, 2016 WL 4595947 (S.D. Cal. Jan. 26, 2016). The court granted the defendant's motion to dismiss. In so doing, the court reasoned that the term "100% Handcrafted" could not "be reasonably interpreted as meaning literally made by hand" and concluded that no "reasonable consumer would understand the term to mean no equipment or automated process was used to manufacture the hammers." *Id.* at *5.

Likewise, in *Werbel v. Pepsico, Inc.*, the plaintiff alleged that the labeling of Cap'n Crunch cereal was misleading because the term "Crunch Berries" suggested that the cereal derived its nutritional value from actual fruit. No. 09-4456, 2010 WL 2673860 (N.D. Cal. July 2, 2010). The court dismissed the plaintiff's lawsuit and characterized his claim as "[n]onsense." *Id.* at *3. Despite the plaintiff's assertion that the "Crunch Berries" in the cereal resembled real fruit, the court made clear that these colored cereal balls "do not even remotely resemble any naturally occurring fruit of any kind." *Id.* And because the defendant did not "represent[] that the Crunch Berries are derived from real fruit" and "clearly state[d] that [the] product is a 'SWEETENED CORN & OAT CEREAL,'" the court found that no reasonable consumer would believe that the "brightly colored balls of cereal" were made from real fruit. *Id.* at *3-4.[4]

And in *Pelayo v. Nestle USA, Inc.*, the court granted the defendant's motion to dismiss the plaintiff's claims that Buitoni pasta was deceptively labeled as "All Natural" in light of the presence of artificial ingredients. 989 F. Supp. 2d 973 (C.D. Cal. 2013). Among other things, the court rejected the plaintiff's

---

[4] Similarly, in *Videtto v. Kellogg USA*, another district court in California dismissed with prejudice a lawsuit alleging that the labeling of Froot Loops cereal misled consumers into believing that the cereal contained real fruit, reasoning that the allegations supporting this theory would require the court to "ignore . . . common sense." No. 08-1324, 2009 WL 1439086, at *4 (E.D. Cal. May 21, 2009).

MOTION TO DISMISS CLASS ACTION COMPLAINT OR, IN THE ALTERNATIVE, TO STAY

contention that the term "natural" implied that Buitoni pasta was "produced or existing in nature" and "not artificial or manufactured." *Id.* at 978. The court held that no reasonable consumer would believe that Buitoni pastas met this standard because "they are a product manufactured in mass . . . and the reasonable consumer is aware that Buitoni pastas are not springing fully-formed from Ravioli trees and Tortellini bushes." *Id.* (citations and internal quotation marks omitted).

Courts outside the Ninth Circuit have likewise rejected consumer lawsuits when the plaintiff's interpretation of the term "natural," as used in a mass-produced and shelf-stable product, defied reasonable consumer expectations and common sense. *See, e.g.*, *Kelly v. Cape Cod Potato Chip Co.*, 81 F. Supp. 3d 754, 759-60 (W.D. Mo. 2015) (dismissing lawsuit challenging packaged potato chips as "all natural" and ruling that "no reasonable consumer could possibly believe that" Cape Code Potato Chips were natural because "they are manufactured in mass" and are "processed foods"); *In re 100% Grated Parmesan Cheese Mktg. & Sales Practices Litig.*, No. 16-5802, 2017 WL 3642076, at *6-7 (N.D. Ill. Aug. 24, 2017) (dismissing lawsuit premised on inclusion of cellulose and potassium sorbate in packaged, pre-grated parmesan cheese and emphasizing that "[t]he products are packaged and shelf-stable at room temperature, a quality that reasonable consumers know is not enjoyed by pure cheese"); *Veal v. Citrus World, Inc.*, No. 12-801, 2013 WL 120761, at *4 n.4 (N.D. Ala. Jan. 8, 2013) (dismissing lawsuit challenging use of "unnatural" flavoring and aroma in packaged "fresh squeezed" orange juice and noting that, "[a]s a matter of common sense, whatever is in a container on a store shelf with an expiration date some weeks hence cannot contain 'fresh' anything").

Here, Plaintiffs allege that they were deceived because they focused on a single term, "natural," and read that word to mean that the deodorants "did not contain synthetic chemicals" whatsoever. Compl. ¶¶ 13-14. But like the plaintiffs' claims in *Stuart, Werbel*, *Videtto*, *Barrett*, *Pelayo*, *Kelly*, *Grated Parmesan*, *Veal*, and numerous other cases, Plaintiffs' claims fail because they defy common sense. Despite Plaintiffs' insistence to the contrary, no reasonable consumer would believe that a shelf-stable deodorant stick made in factories and encased in plastic containers was entirely free of "artificial" or "synthetic" ingredients, especially where the product was not labeled as "all natural" or "100% natural."

**B.      Any mistaken belief over whether deodorants are completely free of any chemicals whatsoever would be dispelled by reviewing the packaging as a whole.**

As explained above, the full disclosures on the packaging, along with basic common sense, make clear that the JĀSÖN deodorants have some synthetic ingredients, even though they do not contain harsh chemicals commonly used in other products.  At best, the most that Plaintiffs can muster is that they subjectively believed that the terms "Naturally Fresh," "Pure Natural," or "Natural Pioneer Since 1959" were potentially ambiguous in the context of deodorants.

But federal courts have repeatedly held that where a product's packaging does not contain any affirmative misrepresentations and instead appear, at best, arguably ambiguous, a reasonable consumer has a duty to review the entire packaging.  And if "any potential ambiguity [about the ingredients] could be resolved by the . . . back panel of the products," then the complaint must be dismissed.  *Workman v. Plum, Inc.*, 141 F. Supp. 3d 1032, 1035-37 (N.D. Cal. 2015) (dismissing lawsuit challenging "true but allegedly deceptive . . . labels").

*Workman* is highly analogous to this case.  The plaintiff there alleged that Plum's Organics fruit puree pouches and fruit bars were deceptive because they prominently depicted high-quality ingredients, such as pumpkin, pomegranate, quinoa, and yogurt, but was predominantly made of lower-cost apple, pear, or banana puree.  *Id.* at 1034.  After reviewing the labels at issue, the court determined that "any potential ambiguity" could "be resolved by the back panel of the products, which lists all ingredients in order of predominance, as required by the FDA."  *Id.* at 1035.  As the court explained:

> One can hardly walk down the aisles of a supermarket without viewing large pictures depicting vegetable or fruit flavors, when the products themselves are largely made up of a different base ingredient.  Every reasonable shopper knows that the devil is in the details.  Moreover, any potential ambiguity could be resolved by the back panel of the products, which listed all ingredients in order of predominance, as required by the FDA.

*Id.* Similarly here, "any potential ambiguity" about the meaning of the word "natural" in the context of deodorants "could be resolved by the back panel" of the product that provides the ingredients.  *Id.*

Another recent decision from this district, *Goldman v. Bayer AG*, highlights this principle.  No. 17-647, 2017 WL 3168525 (N.D. Cal. July 26, 2017).  There, the plaintiffs alleged that the "One A Day" brand name of Bayer's vitamins, read in combination with the "70 gummies" statement on the front of the vitamin bottle, led the plaintiffs to believe that the bottle contained 70 days' worth of vitamins.  *Id.* at *1.  According to the plaintiffs, these representations were misleading because the bottle in fact contained only 35 days' worth of vitamins since the serving size — which was disclosed on the side of the bottle — was two gummies, not one.  *Id.*  The court dismissed the plaintiffs' California and New York consumer protection claims, reasoning that it was "implausible that a reasonable consumer would purchase 'multivitamins' without even knowing what he/she was purchasing."  *Id.* at *6.  Significantly, the court held that "even if the brand name could be construed as descriptive, it does not say 'One Pill A Day.' Taken literally, the reference to One A Day could be a reference to one serving a day, one time a day, or one pill or 'gummy' a day."  *Id.* at *7.  Given that potential ambiguity, the court concluded that "[a] reasonable consumer would simply need turn the bottle slightly to see" the serving size that dispelled the plaintiffs' alleged misconception.  *Id.*

The recent decision in the *In re 100% Grated Parmesan Cheese* multidistrict litigation, which contains a detailed examination of false advertising case law in California and elsewhere, is also highly instructive.  There, the plaintiffs alleged that they were misled by the "100% Grated Parmesan Cheese" labels on various parmesan cheese products because the products contained cellulose powder and potassium sorbate, and therefore cheese was not "100%" of the ingredients.  2017 WL 3642076, at *1-2. In contrast, the defendants said that the term was accurate because it signified that it contained only parmesan cheese (and not other types of cheese, such as processed American cheese).  *Id.* at *6.

After surveying the applicable law in California and elsewhere, the court found that the "principles [espoused by the courts] yield this rule: where a plaintiff contends that certain aspects of a product's packaging are misleading in isolation, but an ingredient label or other disclaimer would dispel any confusion, the crucial issue is whether the misleading content is ambiguous; if so, context can cure the ambiguity and defeat the claim."  *Id.* at *5.  The court noted that "[t]his distinction rests on the principle

that, when product descriptions are merely vague or suggestive, '[e]very reasonable shopper knows the devil is in the details.'" *Id.* at *6 (quoting *Workman*, 141 F. Supp. 3d at 1035). Applying this well-established case law to the plaintiffs' claims, the court found that the "100% Grated Parmesan Cheese" label was ambiguous because, while it "might be interpreted as saying that the product is 100% cheese and nothing else, it also might be an assertion that 100% of the cheese is parmesan cheese, or that the parmesan cheese is 100% grated." *Id.* Given the ambiguity of the allegedly misleading label, the court dismissed the complaint because the plaintiffs' claims were "doomed by the readily accessible ingredient panels on the products that disclose the presence of non-cheese ingredients." *Id.*

Likewise here, even assuming that a reasonable consumer could consider the word "natural" ambiguous in the context of packaged deodorants, it would not be deceptive because the "readily accessible ingredient panels on the product[]" would "disclose" the fact that the deodorants have the chemicals to which Plaintiffs apparently object. *Id.* Therefore, because "any potential ambiguity could be resolved by the . . . back panel of the products," Plaintiffs cannot plausibly allege that the term "natural," as used on the JĀSÖN deodorant products, is likely to mislead a reasonable consumer. *Workman*, 141 F. Supp. 3d at 1035; *see also Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 938 (7th Cir. 2001) (affirming dismissal of claim under analogous Illinois consumer fraud statute where "information available to" the plaintiff would "dispel" any allegedly misleading implication from the product label). Absent any plausible allegation of deception, this Court should dismiss Plaintiffs' lawsuit.

## II. Alternatively, This Court Should Stay This Lawsuit in Deference to the FDA's Ongoing Regulatory Review of the Use of the Term "Natural."

This Court also has the option of staying this case under the primary jurisdiction doctrine in light of the ongoing FDA regulatory review of the meaning of the word "natural."

In order to promote the "proper relationship between the courts and administrative agencies charged with particular regulatory duties," the primary jurisdiction doctrine is applied when enforcement of a claim "requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body." *United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 63–64 (1956). Application of the primary jurisdiction doctrine "is a matter [of] the court's discretion." *Syntek*

*Semiconductor Co. v. Microchip Tech. Inc.*, 307 F.3d 775, 781 (9th Cir. 2002).  When exercising its discretion, this Court must determine whether there is: "(1) [a] need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration."  *Clark v. Time Warner Cable*, 523 F.3d 1110, 1115 (9th Cir. 2008) (citing *Syntek*, 307 F.3d at 781).

Here, if it does not dismiss the complaint in its entirety, the Court should stay the lawsuit in light of the FDA's current rulemaking regarding the use of the word "natural."  In November 2015, the FDA began actively reviewing "the use of the term 'natural' in the labeling of food products. FDA, *Use of the Term "Natural" in the Labeling of Human Food Products; Request for Information and Comments* 80 Fed. Reg. 69905, 69905 (Nov. 12, 2015) (RJN Ex. 8).  The FDA decided to initiate regulatory review of the use of the word "natural" because of the spate of "litigation between private parties" over the meaning of the word "natural."  *Id.* at 69905, 69907.  By the close of the comment period, the FDA had received over 7,600 comments from the public and companies.  *See* Docket Folder Summary, *Use of the Term "Natural" in the Labeling of Human Food Products*, Docket No. FDA-2014-N-1207 (RJN Ex. 9).  Recent comments by Congress — which has oversight over the FDA — also suggest that the agency is actively engaged in the rulemaking process.  In a July 17, 2017 report, the House Committee on Appropriations "commend[ed]" the FDA for its efforts to "defin[e] the term 'natural' and regulat[e] its use[.]"  H.R. Rep. No. 115-232, at 72 (July 17, 2017) (RJN Ex. 10).  The Committee emphasized the importance of this review, explaining that the FDA's efforts would establish "a uniform national standard" for the labeling claim and provide "certainty about the meaning of the term."  *Id.*

In light of this active regulatory review process, the Ninth Circuit last year directed a district court to stay a case alleging that Chobani deceptively and unlawfully labels its yogurt as "natural" in violation of FDA regulations "until such time as the [FDA] completes its proceedings" on the use of the term "natural" in food labeling.  *Kane v. Chobani, LLC*, 645 F. App'x 593, 594 (9th Cir. 2016).  The Court held that "[t]he delineation of the scope and permissible usage" of this term "implicates technical and policy questions that should be addressed in the first instance by the agency with regulatory authority over the

relevant industry rather than the judicial branch" and explained that a stay would conserve judicial resources. *Id.*. Numerous district courts in the Ninth Circuit have followed *Kane* and stayed "natural" cases pending the FDA's determination. *See, e.g.*, *Viggiano v. Johnson & Johnson*, No. 14-7250, 2016 WL 5110500, at *2-3 (C.D. Cal. June 21, 2016) (holding that *Kane* compelled a stay of an action challenging "natural" labels on Nectresse sweetener); *Mains v. Whole Foods Market, Inc.*, No. 12-5652, 2016 WL 5791414, at *2 n.2 (N.D. Cal. Apr. 18, 2016) (finding that *Kane* provided "a basis to stay" a case challenging "all natural" and "natural" labels).

Here, as in the cases discussed above, efficiency strongly weighs in favor of invoking the primary jurisdiction doctrine if this lawsuit is permitted to proceed past the pleadings stage. As the Ninth Circuit put it, "[d]etermining what chemical compounds may be advertised as natural on . . . product labels is 'a particularly complicated issue that Congress has committed to' the FDA." *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 761 (9th Cir. 2015). While the FDA's regulatory review is focused on food products, its guidance may still be useful here because the FDA also has oversight over personal care products and because many of the ingredients challenged in "all natural" food cases are also used in personal care products, including the deodorants at issue here. *Compare* Compl. ¶ 7 (challenging the use of glycerin in JĀSÖN deodorant products) *with* 21 CFR § 182.1320 (FDA regulation providing that glycerin is generally recognized as safe for use in food products). Thus, the FDA's "expert advice" on the use of the term "natural" on product labels may "be useful to the court in considering this lawsuit." *Astiana*, 783 F.3d at 762. Finally, awaiting "expert advice" from the FDA may "ensure uniformity in administration of the comprehensive regulatory regime established by the FDCA," and ensure that this particular case is resolved efficiently. *See id.* at 761. On the other hand, proceeding with this matter without the benefit of the FDA's guidance on "natural" labels risks inconsistency and the potential that the Court and the parties will need to re-visit or re-do work they may perform in the coming months.

### III.   Plaintiffs' Claims Also Fail for Independent, Claim-Specific Reasons.

As explained above, all of Plaintiffs' claims are fatally flawed because Plaintiffs do not — and cannot — allege that the labeling of the JĀSÖN deodorant products is likely to deceive a reasonable consumer. But in addition to this common defect, all six of Plaintiffs' claims fail for independent reasons.

### A.      Plaintiffs' UCL, FAL, CLRA, and fraud claims do not satisfy Rule 9(b).

As the Ninth Circuit has made clear, Plaintiffs' claims under the UCL, FAL, and CLRA, as well as their claim for common-law fraud, are subject to Rule 9(b). *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (holding that Rule 9(b) applies to UCL, FAL, and CLRA claims arising from a "unified course of fraudulent conduct").

Because the gravamen of Plaintiffs' complaint is that consumers paid a price premium by virtue of JĀSÖN's allegedly deceptive labeling, Rule 9(b) requires that Plaintiffs allege with particularity that they suffered economic injury in reliance on the alleged misrepresentations.  *See, e.g.*, *Letizia v. Facebook Inc.*, --- F. Supp. 3d ----, 2017 WL 3006950, at *5 (N.D. Cal. 2017) (noting that allegations of actual reliance are subject to "Rule 9(b)'s heightened pleading requirements"); *In re Countrywide Fin. Corp. Secs. Litig.*, 588 F. Supp. 2d 1132, 1198 (C.D. Cal. 2008) ("[R]eliance . . . is subject to the pleading requirements of Rule 9(b) because it is one of the 'circumstances constituting fraud' . . . .").  And because this case is predicated on a "price premium" theory of injury, Plaintiffs must also allege with particularity that they paid a "premium [for the products] due to the alleged misrepresentation."  *Bailey v. Kind, LLC*, No. 16-168, 2016 WL 3456981, at *6 (C.D. Cal. June 16, 2016).

Plaintiffs have not met this standard.  The thesis of Plaintiffs' complaint is that JĀSÖN was able to charge a "substantial price premium" by touting the JĀSÖN deodorant products as "natural."  Compl. ¶¶ 13-14.  But Plaintiffs have not alleged any of the factual predicates for this theory, including the amount they paid for the JĀSÖN deodorant products, the identity or the cost of comparable deodorant products (which would establish the benchmark price relative to which JĀSÖN allegedly charged a price premium), or the size of the price premium they allegedly paid.  Because Plaintiffs have not alleged — let alone with the particularity required by Rule 9(b) — that they suffered economic injury in reliance on the term "natural," this Court should dismiss their UCL, CLRA, FAL, and common-law fraud claims.

### B.      Plaintiffs fail to state a claim for breach of express warranty.

"To state a claim for breach of express warranty under California law, a plaintiff must allege (1) the exact terms of the warranty; (2) reasonable reliance thereon; and (3) a breach of warranty which

1    proximately caused plaintiff's injury."  *Nabors v. Google, Inc.*, No. 10-3897, 2011 WL 3861893, at *4

2    (N.D. Cal. Aug. 30, 2011).

3          Here, Plaintiffs allege that JĀSÖN "expressly warranted that the Products are 'natural'" and that

4    "[t]he Products do not conform to the express warranty because they contain ingredients that are unnatural

5    and synthetic."  Compl. ¶¶ 62, 64.  But these allegations cannot give rise to a claim for breach of express

6    warranty because they do not describe the "exact terms of the warranty," as is required to state a claim for

7    breach of express warranty under California law.  *Nabors*, 2011 WL 3861893, at *4 (citing *Williams v.*

8    *Beechnut Nutrition Corp.*, 185 Cal. App. 3d 135, 142 (1986)).

9          Moreover, as explained above, JĀSÖN has not breached any express warranty because the

10   challenged labeling accurately discloses what ingredients are — and are not — in the JĀSÖN deodorant

11   products.  Courts have routinely dismissed breach of express warranty claims in alleged mislabeling cases

12   where the challenged labeling truthfully identifies the product's ingredients.  *See, e.g.*, *Viggiano v. Hansen*

13   *Natural Corp.*, 944 F. Supp. 2d 877, 983-94 (C.D. Cal. 2013) (dismissing express warranty claim premised

14   on term "all natural flavors" because this phrase "accurately describes the product"); *McKinnis v. Kellogg*

15   *USA*, No. 07-2611, 2007 WL 4766060, at *5 (C.D. Cal. Sept. 19, 2007) (dismissing express warranty claim

16   when defendant accurately represented that its cereal contained "natural fruit flavors").  This Court should

17   likewise dismiss Plaintiffs' breach of express warranty claim.

18                    **C.     Plaintiffs' unjust enrichment claim also fails.**

19         Finally, Plaintiffs fail to allege facts to support their claim that JĀSÖN was "unjustly enriched."

20   Their theory of unjust enrichment is that the JĀSÖN deodorant products were falsely advertised as

21   "natural."  But because no reasonable consumer would be deceived by the challenged labeling, Plaintiffs

22   cannot show that JĀSÖN has been "unjustly enriched" by retaining the monies paid by the putative class

23   to purchase the products.  *See, e.g.*, *Marilao v. McDonald's Corp.*, 632 F. Supp. 2d 1008, 1013 (S.D. Cal.

24   2009) (dismissing claim for unjust enrichment predicated on same allegations as UCL claim because

25   "Plaintiff allege[d] no wrongful conduct" by the defendant); *McKinnis*, 2007 WL 4766060, at *6

26   (dismissing unjust enrichment claim where "Plaintiffs . . . failed to state any substantive claim" that the

27

28

1  packaging of Froot Loops would mislead a reasonable consumer).  This Court should accordingly dismiss

2  Plaintiffs' claim for unjust enrichment.

3  **IV.    Plaintiffs Lack Standing to Assert Common-Law Claims on Behalf of a Nationwide Class.**

4          In addition to their UCL, FAL, and CLRA claims, which they assert only on behalf of putative class

5  members who reside in or purchased the products in California, Plaintiffs also seek to assert claims for

6  fraud, breach of express warranty, and unjust enrichment on behalf of a nationwide class.  To the extent

7  that the Court does not dismiss these claims outright, it should dismiss Plaintiffs' claims on behalf of

8  putative class members outside of California for lack of standing.

9          As this Court has made clear, "standing is claim- and relief-specific, such that a plaintiff must

10  establish Article III standing for each of her claims and for each form of relief sought."  *In re Carrier IQ,*

11  *Inc., Consumer Privacy Litig.*, 78 F. Supp. 3d 1051, 1064-65 (N.D. Cal. 2015) (internal quotations omitted)

12  (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006)).  In a class action, "[a]t least one named

13  plaintiff must have standing with respect to each claim the class representatives seek to bring."  *In re*

14  *Ditropan XL Antitrust Litig.*, 529 F. Supp. 2d 1098, 1107 (N.D. Cal. 2007).  Accordingly, when "a

15  representative plaintiff is lacking for a particular state, all claims based on *that* state's laws are subject to

16  dismissal."  *In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133, 1164 (N.D. Cal. 2009) (citing

17  *Ditropan*, 529 F. Supp. 2d at 1106-07.

18          Here, both of the named plaintiffs are residents of California and allege that they purchased the

19  JĀSÖN deodorant products in California.  Compl. ¶¶ 13-14.  Because neither of the named plaintiffs

20  resides in or suffered an injury in any state other than California, Plaintiffs "lack standing to assert claims

21  based on those states' laws." *Fenerjian v. Nongshim Co.*, 72 F. Supp. 3d 1058, 1082-83 (N.D. Cal. 2014);

22  *see also Carrier IQ*, 78 F. Supp. 3d at 1075 (holding that "named Plaintiffs do not have standing to assert

23  claims from states in which they do not reside or did not purchase [the products at issue]").  The fact that

24  Plaintiffs do not assert any claims under the consumer protection statutes of other states is irrelevant, as

25  Article III standing requirements apply with equal force to both statutory and common-law claims.  *See*

26  *Corcoran v. CVS Health Corp.*, No. 15-3504, 2016 WL 4080121, at *3 (N.D. Cal. July 29, 2016)

27  ("Plaintiffs do not have standing to bring the common law claims under the laws of the . . . states to which

28

MOTION TO DISMISS CLASS ACTION COMPLAINT OR, IN THE ALTERNATIVE, TO STAY

they have alleged no connection.  The common law claims brought based on the laws of those states are therefore dismissed."); *Flash Memory*, 643 F. Supp. 2d at 1163-64 (dismissing unjust enrichment claims asserted under laws of states in which no named plaintiff resided).  This Court should therefore dismiss Plaintiffs' claims on behalf of putative class members outside of California for lack of standing.

## V.     **Plaintiffs Lack Standing to Seek Injunctive Relief.**

Under Article III, a party seeking injunctive relief must allege not only that she has "suffered or [is] threatened with a concrete and particularized legal harm" but also that there is "a sufficient likelihood that [she] will again be wronged in a similar way."  *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (citation and internal quotation marks omitted); *see also Schneider v. Chipotle Mexican Grill, Inc.*, No. 16-2200, 2016 WL 6563348, at *3 (N.D. Cal. Nov. 4, 2016) ("To have standing to seek prospective injunctive relief under Article III . . . a plaintiff must 'demonstrate a real and immediate threat of repeated injury in the future.'") (quoting *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011)).  In a putative class action, "[u]nless the named plaintiffs are themselves entitled to seek injunctive relief, they may not represent a class seeking that relief."  *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1045 (9th Cir. 1999).

Numerous courts in this district have applied this rule in alleged mislabeling cases to hold that plaintiffs lack standing to seek injunctive relief because, having learned of the alleged misrepresentation, there is no plausible risk that the plaintiff will be injured again in a similar way.  *See, e.g.*, *Schneider*, 2016 WL 6563348, at *3; *Garrison v. Whole Foods Mkt. Grp., Inc.*, No. 13-5222, 2014 WL 2451290 at *5 (N.D. Cal. June 2, 2014) ("The named plaintiffs in this case allege that had they known the Whole Foods products they purchased contained SAPP, they would not have purchased them. Now they know. There is therefore no danger that they will be misled in the future"); *Morgan v. Wallaby Yogurt Co.,* No. 13-296, 2014 WL 1017879, at *6 (N.D. Cal. Mar. 13, 2014) (holding plaintiffs lacked standing to seek injunctive relief because they "now know what evaporated cane juice is and . . . cannot plausibly allege that they would purchase the challenged products in the future if they were properly labeled").

Plaintiffs attempt to sidestep their lack of standing by alleging that they "would purchase the Products again in the future if Defendant changed the composition of the Products so that they conformed

to their 'natural' labeling and marketing." Compl. ¶¶ 13-14. But the injunctive relief Plaintiffs seek would not force JĀSÖN to change the *composition* of its products; instead, it would require JĀSÖN to change the *labeling* of those products (which, in any event, has already occurred prior to the filing of this lawsuit). Accordingly, Plaintiffs have not plausibly alleged that they would purchase JĀSÖN deodorant products in the future and therefore lack standing to seek injunctive relief.

*Romero v. Flowers Bakeries, LLC*, a case from this District, is directly on point. There, the plaintiff brought a putative class action alleging that the labels on Nature's Own bread products misleadingly suggested that the bread was natural and/or healthy. No. 14-5189, 2015 WL 2125004 (N.D. Cal. May 6, 2015). In attempting to establish her standing to seek injunctive relief, the plaintiff "argue[d] that she is likely to be injured again because '[i]njunctive relief in this action will ensure Plaintiff and the other consumers can confidently rely on Defendant's labeling representations when deciding whether to buy Nature's Own products so that she is not deceived in the same way again.'" *Id.* at *7. The court rejected this argument, noting that "[a]ny injunctive relief the Court could grant would pertain only to Defendant's labeling practice, and not to the ingredients that Defendant uses." *Id.* The court further held that "[n]ow that Plaintiff is aware that Defendant's bread contains undesirable chemicals and processed wheat, given her endeavor 'to refrain from buying equivalent foods which are not natural' or are not whole wheat, there is no likelihood that Plaintiff will purchase Defendant's products again." *Id.*

Here, as in *Romero*, Plaintiffs cannot plausibly allege that they would purchase the JĀSÖN deodorant products again, as they would still contain "synthetic" and "unnatural" ingredients even if JĀSÖN changed their labeling. Accordingly, this Court should dismiss Plaintiffs' request for injunctive relief. *See, e.g.*, *Khasin v. R. C. Bigelow, Inc.*, No. 12-2204, 2016 WL 4502500, at *4-5 (N.D. Cal. Aug. 29, 2016) (finding plaintiff's assertion that he "would consider buying Bigelow tea again" if the challenged claims were removed from the package "unconvincing" and cautioning that a "plaintiff may not manufacture standing for injunctive relief simply by expressing an intent to purchase the challenged product in the future."); *Anderson v. Hain Celestial Group, Inc*., 87 F. Supp. 3d 1226, 1234 (N.D. Cal. 2015) (dismissing plaintiff's request for injunctive relief and noting that plaintiff's allegation that he would purchase the challenged products in the future "would be implausible if read with [his] other allegations").

## <u>CONCLUSION</u>

For the foregoing reasons, this Court should dismiss Plaintiffs' Class Action Complaint with prejudice or, in the alternative, stay this lawsuit.


Dated:  October 6, 2017                                              JENNER & BLOCK LLP

By: /s/  Kenneth K. Lee

Kenneth K. Lee

Attorneys for Defendant
The Hain Celestial Group, Inc.

MOTION TO DISMISS CLASS ACTION COMPLAINT OR, IN THE ALTERNATIVE, TO STAY