**JENNER & BLOCK LLP**
Kenneth K. Lee (Cal. Bar No. 264296)
klee@jenner.com
Alexander M. Smith (Cal. Bar No. 295187)
asmith@jenner.com
633 West 5th Street, Suite 3600
Los Angeles, CA  90071-2054
Phone:      (213) 239-5100
Facsimile:  (213) 239-5199

**JENNER & BLOCK LLP**
Dean N. Panos (admitted *pro hac vice*)
dpanos@jenner.com
353 N. Clark Street
Chicago, IL 60654-3456
Phone:      (312) 222-9350
Facsimile:  (312) 527-0484

Attorneys for Defendants
The Hain Celestial Group, Inc., and
JĀSÖN Natural Products, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAKINDE PECANHA and SHAUN RAY BELL, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE HAIN CELESTIAL GROUP, INC. and JĀSÖN NATURAL PRODUCTS, INC.,<br><br>Defendants. | Case No. 3:17-cv-4517 EMC<br><br>The Honorable Edward M. Chen<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS OR STAY FIRST AMENDED CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Hearing Date:  January 18, 2018<br>Hearing Time:  1:30 p.m.<br>Courtroom:      5 (17th Floor, San Francisco) |

## NOTICE OF MOTION

PLEASE TAKE NOTICE that, on January 18, 2018, at 1:30 pm, or as soon thereafter as the Court is available, in Courtroom 5 of the federal courthouse located at 450 Golden Gate Avenue, San Francisco, California 94102, Defendants The Hain Celestial Group, Inc. ("Hain Celestial") and JĀSÖN Natural Products, Inc. ("JĀSÖN") will and hereby do move this Court to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, to stay the case, on the grounds that: (1) Plaintiffs' First Amended Class Action Complaint ("FAC") fails to state a plausible claim that consumers would be misled by the term "natural" found on JĀSÖN deodorants; (2) the Court should stay this case in deference to the FDA under the doctrine of primary jurisdiction; (3) Plaintiffs fail to state a plausible claim against Hain Celestial, JĀSÖN's parent company; (4) Plaintiffs' individual claims fail on their own; and (5) Plaintiffs lack standing to assert claims on behalf of putative class members outside of California.

This Motion is based on this Notice of Motion and Motion, the following Memorandum of Points and Authorities, the concurrently-filed Request for Judicial Notice and Proposed Order, any additional briefing on this subject, and the evidence and arguments that will be presented to the Court at the hearing on this matter.

Dated:  November 3, 2017

JENNER & BLOCK LLP

By: /s/  Kenneth K. Lee
Kenneth K. Lee

Attorneys for Defendants
The Hain Celestial Group, Inc., and
JĀSÖN Natural Products, Inc.

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND.........................................................3

ARGUMENT .....................................................................................................................5

I.     This Court Should Dismiss Plaintiffs' Lawsuit Because Plaintiffs Do Not Plausibly Allege That the References to "Natural" Are Likely to Deceive a Reasonable Consumer..................................................................................5

     A.     The JĀSÖN packaging "as a whole," as well as basic common sense, makes clear that "natural" refers to the absence of the identified common chemicals ......................................................................6

     B.     Any mistaken belief over whether deodorants are completely free of any chemicals whatsoever would be dispelled by reviewing the packaging as a whole.........................................................................10

II.     Alternatively, This Court Should Stay This Lawsuit in Deference to the FDA's Ongoing Regulatory Review of the Use of the Term "Natural."........................12

III.     Plaintiffs Fail to State a Claim Against Hain Celestial........................................14

IV.     Plaintiffs' Claims Also Fail for Independent, Claim-Specific Reason ................16

     A.     Plaintiffs' UCL, FAL, CLRA, and fraud claims do not satisfy Rule 9(b) ..........16

     B.     Plaintiffs fail to state a claim for breach of express warranty ...........................17

     C.     Plaintiffs' unjust enrichment claim also fails .......................................18

V.     Plaintiffs Lack Standing to Assert Common-Law Claims on Behalf of a Nationwide Class .................................................................................18

CONCLUSION.................................................................................................................19

MOTION TO DISMISS OR STAY FIRST AMENDED CLASS ACTION COMPLAINT

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)................................................................................................1, 5, 7

*Astiana v. Hain Celestial Grp., Inc.*,
    783 F.3d 753 (9th Cir. 2015) ...............................................................................14

*Bailey v. Kind, LLC*,
    No. 16-168, 2016 WL 3456981 (C.D. Cal. June 16, 2016) ...............................16

*Barren v. Harrington*,
    152 F.3d 1193 (9th Cir. 1998) .............................................................................15

*Barrett v. Milwaukee Elec. Tool, Inc.*,
    No. 14-1804, 2016 WL 4595947 (S.D. Cal. Jan. 26, 2016) ..............................8, 9

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...............................................................................................5

*Bober v. Glaxo Wellcome PLC*,
    246 F.3d 934 (7th Cir. 2001) ...............................................................................12

*Branch v. Tunnell*,
    14 F.3d 449 (9th Cir. 1994) ...................................................................................4

*Clark v. Time Warner Cable*,
    523 F.3d 1110 (9th Cir. 2008) .............................................................................13

*Corcoran v. CVS Health Corp.*,
    No. 15-3504, 2016 WL 4080124 (N.D. Cal. July 29, 2016) ..............................19

*DaimlerChrysler Corp. v. Cuno*,
    547 U.S. 332 (2006).............................................................................................18

*Davenport v. Litton Loan Servicing, LP*,
    725 F. Supp. 2d 862 (N.D. Cal. 2010) ..................................................................5

*Fenerjian v. Nongshim Co.*,
    72 F. Supp. 3d 1058 (N.D. Cal. 2014) ................................................................19

*Fink v. Time Warner Cable*,
    714 F.3d 739 (2d Cir. 2013)...................................................................................7

*Freeman v. Time, Inc.*,
    68 F.3d 285 (9th Cir. 1995) ................................................................................................6, 7

*Galbraith v. County of Santa Clara*,
    307 F.3d 1119 (9th Cir. 2002) ...............................................................................................4

*Goldman v. Bayer AG*,
    No. 17-647, 2017 WL 3168525 (N.D. Cal. July 26, 2017) ...................................................11

*Hairston v. S. Beach Beverage Co., Inc.*,
    No. 12-1429, 2012 WL 1893818 (C.D. Cal. May 18, 2012) ..................................................6

*Henderson v. Gruma Corp*,
    No. 10-4173, 2011 WL 1362188 (C.D. Cal. Apr. 11, 2011) ..................................................7

*Hill v. Roll Int'l Corp.*,
    195 Cal. App. 4th 1295 (2011) ..............................................................................................6

*In re 100% Grated Parmesan Cheese Mktg. & Sales Practices Litig.*,
    No. 16-5802, 2017 WL 3642076 (N.D. Ill. Aug. 24, 2017) .........................................9, 11, 12

*In re Carrier IQ, Inc., Consumer Privacy Litig.*,
    78 F. Supp. 3d 1051 (N.D. Cal. 2015) ............................................................................18, 19

*In re Countrywide Fin. Corp. Secs. Litig.*,
    588 F. Supp. 2d 1132 (C.D. Cal. 2008) ...............................................................................16

*In re Ditropan XL Antitrust Litig.*,
    529 F. Supp. 2d 1098 (N.D. Cal. 2007) ...............................................................................18

*In re Flash Memory Antitrust Litig.*,
    643 F. Supp. 2d 1133 (N.D. Cal. 2009) ..........................................................................18, 19

*In re Honest Mktg. Litig.*,
    No. 16-1125 (S.D.N.Y.) .........................................................................................................6

*In re iPhone Application Litig.*,
    No. 11-2250, 2011 WL 4403963 (N.D. Cal. Sept. 20, 2011) ...............................................15

*Kane v. Chobani, LLC*,
    645 F. App'x 593 (9th Cir. 2016) ...................................................................................13, 14

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) ..............................................................................................16

*Kelly v. Cape Cod Potato Chip Co.*,
    81 F. Supp. 3d 754 (W.D. Mo. 2015) .....................................................................................9

MOTION TO DISMISS OR STAY FIRST AMENDED CLASS ACTION COMPLAINT

*Lane v. Vitek Real Estate Indus. Grp.,*
    713 F. Supp. 2d 1092 (E.D. Cal. 2010)................................................................16

*Lavie v. Procter & Gamble Co.,*
    105 Cal. App. 4th 496 (2003) ............................................................................5, 6

*Letizia v. Facebook Inc.,*
    --- F. Supp. 3d ----, 2017 WL 3006950 (N.D. Cal. 2017).................................16

*Mains v. Whole Foods Market, Inc.,*
    No. 12-5652, 2016 WL 5791414 (N.D. Cal. Apr. 18, 2016).............................14

*Manchouck v. Mondelēz Int'l Inc.,*
    No. 13-2148, 2013 WL 5400285 (N.D. Cal. Sept. 26, 2013)...............................4

*Marder v. Lopez,*
    450 F.3d 445 (9th Cir. 2006) ................................................................................4

*Marilao v. McDonald's Corp.,*
    632 F. Supp. 2d 1008 (S.D. Cal. 2009)..............................................................18

*McKinnis v. Kellogg USA,*
    No. 07-2611, 2007 WL 4766060 (C.D. Cal. Sept. 19, 2007) .......................17, 18

*Myers v. Winn Law Grp., APC,*
    No. 11-2372, 2012 WL 5187771 (E.D. Cal. Oct. 17, 2012)..............................15

*N. Natural Gas Co. v. Superior Court,*
    64 Cal. App. 3d 983 (1976) ................................................................................15

*Nabors v. Google, Inc.,*
    No. 10-3897, 2011 WL 3861893 (N.D. Cal. Aug. 30, 2011) ............................17

*Pelayo v. Nestle USA, Inc.,*
    989 F. Supp. 2d 973 (C.D. Cal. 2013) ...............................................................8, 9

*Ranza v. Nike, Inc.,*
    793 F.3d 1059 (9th Cir. 2015) ............................................................................15

*Rapoport-Hecht v. Seventh Generation, Inc.,*
    No. 14-9087 (S.D.N.Y.).........................................................................................6

*Stuart v. Cadbury Adams USA, LLC,*
    458 F. App'x 689 (9th Cir. 2011) ......................................................................7, 9

*Syntek Semiconductor Co. v. Microchip Tech. Inc.,*
    307 F.3d 775 (9th Cir. 2002) ..............................................................................13

*United Energy Trading, LLC v. Pac. Gas & Elec. Co.*,
    146 F. Supp. 3d 1122 (N.D. Cal. 2015) ............................................................. 5

*United States v. Bestfoods*,
    524 U.S. 51 (1998) ............................................................................................ 15

*United States v. W. Pac. R.R. Co.*,
    352 U.S. 59 (1956) ............................................................................................ 12

*Veal v. Citrus World, Inc.*,
    No. 12-801, 2013 WL 120761 (N.D. Ala. Jan. 8, 2013) .................................... 9

*Videtto v. Kellogg USA*,
    No. 08-1324, 2009 WL 1439086 (E.D. Cal. May 21, 2009) ........................... 8, 9

*Viggiano v. Hansen Natural Corp.*,
    944 F. Supp. 2d 877 (C.D. Cal. 2013) ............................................................. 17

*Viggiano v. Johnson & Johnson*,
    No. 14-7250, 2016 WL 5110500 (C.D. Cal. June 21, 2016) ........................... 14

*Vincent v. People Against Dirty*,
    No. 16-6936 (S.D.N.Y.) ...................................................................................... 6

*Werbel v. Pepsico, Inc.*,
    No. 09-4456, 2010 WL 2673860 (N.D. Cal. July 2, 2010) ............................ 8, 9

*Williams v. Beechnut Nutrition Corp.*,
    185 Cal. App. 3d 135 (1986) ............................................................................ 17

*Workman v. Plum, Inc.*,
    141 F. Supp. 3d 1032 (N.D. Cal. 2015) ............................................... 10, 11, 12

**STATUTES**

Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.* ......................... *passim*

False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq.*, .......................... *passim*

Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.* .......................... *passim*

1

## INTRODUCTION

2      On its website and elsewhere, JĀSÖN prominently touts its Code of Honor, which affirms that its

3  products are made with "safe, gentle and effective ingredients."  Consistent with that credo, JĀSÖN makes

4  a line of deodorant sticks that do not contain harsh chemicals commonly found in other deodorants.  As

5  the front of the packaging prominently declares, there is "NO ALUMINUM, PARABENS,

6  PHTHALATES, OR PROPYLENE GLYCOL" in those deodorant sticks.  And right next to that disclosure

7  were statements pointing out that the deodorants were "Pure Natural" or "Naturally Fresh" in light of the

8  absence of those common chemicals.[1]

9      Plaintiffs Makinde Pecanha and Shaun Ray Bell do not dispute that JĀSÖN deodorant products are

10  free from aluminum, parabens, phthalates, and propylene glycol.  Nonetheless, Plaintiffs filed this putative

11  class action lawsuit claiming deception.  By focusing solely on the word "natural" and ignoring everything

12  else — including the packaging's other disclosures and basic common sense — Plaintiffs claim that they

13  believed that these packaged deodorants did not have any artificial or synthetic ingredients whatsoever.

14  They then claim that they were surprised to learn after reading the ingredient list on the packaging that

15  these deodorants include glycerin, tocopherol acetate, and ethylhexylglycerin, which they assert are

16  synthetic.  And while Plaintiffs have amended their complaint in response to the numerous deficiencies

17  that Hain Celestial identified in its initial motion to dismiss, the claims set forth by Plaintiffs' FAC are

18  substantively indistinguishable from the claims Plaintiffs initially asserted.  Plaintiffs' theory of the case

19  does not pass the smell test and should be dismissed.

20      First, Plaintiffs have not plausibly alleged that a reasonable consumer would be misled by the use

21  of the single term "natural" on JĀSÖN deodorants.  The Ninth Circuit has held that courts must review the

22  challenged packaging "as a whole" to determine whether it is misleading.  Plaintiffs cannot fixate on a

23  single word ("natural") and put blinders on to the rest of the packaging.  When viewed "as a whole," the

24  reference to "natural" or "naturally" refers to the fact that there is "no aluminum, parabens, phthalates, or

25  propylene glycol" in the deodorants.  Nor can Plaintiffs ignore "common sense," which the Supreme Court

26  in *Ashcroft v. Iqbal* directed lower courts to apply to weed out implausible cases at the pleading stage.  It

27

28  _____

[1] Prior to the filing of this lawsuit, JĀSÖN decided to remove references to "natural" in all of its products.

defies common sense that a reasonable consumer would think that a mass-manufactured deodorant designed to ward off smell from sweat was completely devoid of any stabilizing ingredients such as glycerin and tocopherol acetate.  Notably, the products were labeled as "natural" — not "all natural" or "100% natural" — which is a key distinction recognized by many courts.

Second, to the extent that Plaintiffs were allegedly confused by the use of the term "natural" in the context of deodorants, federal courts have consistently held that consumers are then put on notice that they should review the entire packaging, including the ingredient list, to clarify any ambiguity.  Doing so would have dispelled any ambiguity about the word "natural" in the context of packaged deodorants because the ingredient list discloses the ingredients that Plaintiffs challenge.  Indeed, that is the only reason why Plaintiffs know that the deodorants contain those challenged ingredients.

Third, this Court has the option of invoking the doctrine of primary jurisdiction to stay this case while the FDA engages in regulatory review of the use of the term "natural."  In light of the FDA's current regulatory activity over the term "natural," this Court should let the FDA address this issue in the first instance.

Fourth, Plaintiffs' FAC fails to state a claim against JĀSÖN's parent company, Hain Celestial.[2] All of the deodorant products at issue in this lawsuit are manufactured by JĀSÖN — not by Hain Celestial. As Plaintiffs acknowledge in the FAC, JĀSÖN is a separate company that is legally distinct from Hain Celestial.  And as courts have repeatedly held, a plaintiff cannot hold a parent company liable for the actions of a subsidiary unless she alleges specific facts showing that the parent company was involved in, or derivatively liable for, the subsidiary's alleged misconduct.  Plaintiffs have not done so here.

Fifth, Plaintiffs' various individual claims fail for a variety of reasons.  Their claims under the Unfair Competition Law (UCL), False Advertising Law (FAL), and Consumers Legal Remedies Act (CLRA), and their claim for common-law fraud fail because Plaintiffs do not allege sufficient or particularized facts to establish that they paid a price premium in reliance on the alleged misrepresentations, as required by Rule 9(b).  Their breach of express warranty claim also fails because Plaintiffs neither

---

[2] Plaintiffs' initial complaint named Hain Celestial, but not JĀSÖN, as a defendant. *See* ECF No. 1.  After Hain Celestial moved to dismiss, Plaintiffs subsequently amended their complaint to name both JĀSÖN and Hain Celestial as defendants. *See* ECF No. 23.

1  identify the exact terms of the warranty nor plausibly allege that JĀSÖN breached any such warranty.  And

2  Plaintiffs' unjust enrichment claim fails because Plaintiffs have not plausibly alleged that JĀSÖN was

3  unjustly enriched at their expense.

4    <u>Finally</u>, this Court should dismiss Plaintiffs' claims on behalf of a nationwide class for lack of

5  standing.  Both Plaintiffs reside in California and allegedly purchased the JĀSÖN deodorant products in

6  California.  Accordingly, as this Court has made clear in other cases, they lack standing to sue under the

7  laws of states other than California.

8  **FACTUAL AND PROCEDURAL BACKGROUND**

9    JĀSÖN makes a line of personal care products that includes several varieties of deodorant, such as

10  "Purifying Tea Tree," "Soothing Aloe Vera," Nourishing Apricot," and "Calming Lavender."  FAC ¶ 4.

11  The products are shelf-stable deodorant sticks and come in plastic containers.  As noted in the complaint,

12  JĀSÖN prominently touts its Code of Honor stating that its products are made with "safe, gentle and

13  effective ingredients."  *Id.* ¶ 3.  In keeping with that Code of Honor, the front packaging of the JĀSÖN

14  deodorant products at one point stated that they are "Pure Natural" or "Naturally Fresh" deodorants that

15  contain "[n]o aluminum, parabens, phthalates, or propylene glycol," all of which are common ingredients

16  in stick deodorant.  *See id.* ¶¶ 3, 23-25.  Those statements appeared on labels like the one below:

17

18



FAC ¶ 23.   The back of the deodorant container, in accordance with FDA regulations, lists all of the ingredients, including the challenged ingredients:

**Ingredients:** Propanediol, Aqua (Water), Glycerin, Sodium Stearate, Zinc Ricinoleate, Polyglyceryl-3 Caprate, Aloe Barbadensis Leaf Juice,  Camellia Sinensis Leaf Extract, Citrus Grandis (Grapefruit) Seed Extract, Hamamelis Virginiana (Witch Hazel) Extract,  Allantoin, Behenyl Alcohol, Ethylhexylglycerin, Glyceryl Stearate, Silica, Sodium Bicarbonate, Sucrose Cocoate, Tocopheryl Acetate, Zea Mays (Corn) Starch, Alcohol

RJN Ex. 1.[3]

Plaintiffs allege that JĀSÖN's use of the terms "Naturally Fresh," "Pure Natural Deodorant," "Pure Natural Deodorant Stick," and "Natural Pioneer Since 1959" is misleading because the JĀSÖN deodorant products contain tocopherol acetate, glycerin, and ethylhexylglycerin, which Plaintiffs characterize as "unnatural and/or synthetic ingredients."[4]   FAC ¶¶ 7-8.   They further allege that the inclusion of these

_____

[3] In evaluating a motion to dismiss, this Court is entitled to consider "evidence on which the complaint 'necessarily relies,'" even if the evidence is not physically attached to the complaint.  *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006); see also *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002) (holding that a court ruling on a motion to dismiss may consider "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading").  Thus, this Court may properly take judicial notice of the labeling of the JĀSÖN deodorant products, as these labels are referenced in the complaint and serve as the basis for Plaintiffs' claims.  *See, e.g.*, *Manchouck v. Mondelēz Int'l Inc.*, No. 13-2148, 2013 WL 5400285, at *3 (N.D. Cal. Sept. 26, 2013) (taking judicial notice of cookie packaging "as the contents of these documents are 'not subject to reasonable dispute,' and are incorporated into the amended complaint by reference").

[4] Although Plaintiffs characterize glycerin as a "synthetic" ingredient, glycerin exists in both organic and synthetic forms.  For instance, in April 2015, the National Organic Standards Board recommended that the USDA discontinue classifying glycerin as a "synthetic" substance due to the widespread availability of "organically produced glycerin."  RJN Ex. 11.  Plaintiffs do not allege *any* facts suggesting that JĀSÖN uses synthetic, as opposed to organic, glycerin in the JĀSÖN deodorant products.

ingredients on six of JĀSÖN's deodorant products misled them because they understood the term "natural" to mean that JĀSÖN deodorant sticks did not contain any "synthetic chemicals" at all. *Id.* ¶¶ 13-14.

Plaintiffs filed this lawsuit on August 8, 2017, and subsequently filed their FAC on October 20, 2017. Like their initial complaint, Plaintiffs' FAC asserts claims on behalf of a putative nationwide class of individuals who purchased JĀSÖN deodorant products, as well as a subclass of California residents who purchased JĀSÖN deodorant products. *Id.* ¶¶ 30-31. Plaintiffs assert claims for breach of express warranty, unjust enrichment, and common-law fraud on behalf of both the nationwide class and the California subclass. *Id*. ¶¶ 62-79. In addition, Plaintiffs assert claims under three California statutes on behalf of the California subclass, including a claim under the UCL, Cal. Bus. & Prof. Code §§ 17200 *et seq.*, a claim under the FAL, Cal. Bus. & Prof. Code §§ 17500 *et seq.*, and a claim under the CLRA, Cal. Civ. Code §§ 1750 *et seq. Id.* ¶¶ 38-61. Plaintiffs seek a variety of remedies on behalf of the putative class, including damages, restitution, and injunctive relief. *See id.* at 14-15 (Prayer for Relief).

## ARGUMENT

To survive a motion to dismiss, "a complaint must have sufficient factual allegations to 'state a claim to relief that is plausible on its face.'" *United Energy Trading, LLC v. Pac. Gas & Elec. Co.*, 146 F. Supp. 3d 1122, 1132 (N.D. Cal. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "[W]here the well-pleaded facts do not permit the court to infer more than a mere *possibility* of misconduct, the complaint has not shown the pleader is entitled to relief." *Davenport v. Litton Loan Servicing, LP*, 725 F. Supp. 2d 862, 872 (N.D. Cal. 2010). Rather, the pleader must "allege more by way of factual content to 'nudg[e]' his claim" of unlawful action "'across the line from conceivable to plausible.'" *Iqbal*, 556 U.S. at 683 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

**I.    This Court Should Dismiss Plaintiffs' Lawsuit Because Plaintiffs Do Not Plausibly Allege That the References to "Natural" Are Likely to Deceive a Reasonable Consumer.**

Under California's consumer protection statutes, a labeling claim is actionable only if it is "likely to deceive" a reasonable consumer. *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003). "'Likely to deceive' implies more than a mere possibility that the advertisement might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *Id.* Rather, the statement

must be "such that *it is probable that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.*" *Id.* (emphasis added).  As one California appellate court put it, "the standard is not a least sophisticated consumer," but rather a reasonable one.  *Hill v. Roll Int'l Corp.*, 195 Cal. App. 4th 1295, 1304 (2011) (citation omitted).  "[W]here a Court can conclude as a matter of law that members of the public are not likely to be deceived by the product packaging, dismissal is appropriate."  *Hairston v. S. Beach Beverage Co., Inc.*, No. 12-1429, 2012 WL 1893818, at *4 (C.D. Cal. May 18, 2012).

### A.    The JĀSÖN packaging "as a whole," as well as basic common sense, makes clear that "natural" refers to the absence of the identified common chemicals.

The Ninth Circuit has held that a court must evaluate whether a label is false or deceptive by considering the packaging "as a whole," instead of evaluating a single statement in isolation.  *Freeman v. Time, Inc.*, 68 F.3d 285, 290 (9th Cir. 1995) (affirming dismissal of false advertising lawsuit and reasoning that the plaintiff could have "dispelled" any "ambiguity" by considering the "promotion as a whole").

Here, Plaintiffs fixate on a single word — "natural" — in claiming that they thought every single ingredient in the deodorant sticks was neither artificial nor synthetic.  But the products were never labeled as "all natural" or "100% natural," and the packaging never stated that product contained only natural ingredients. Federal courts have recognized the difference between "all natural" and "100% natural" (which arguably suggest that every ingredient is natural) and "natural" (which undoubtedly does not do so).  In approving class settlements involving "100% natural" and "all natural" claims on personal care and household products, three federal courts recently issued orders in which the defendant companies would replace the term "100% natural" or "all natural" with the term "natural" on their products to underscore to consumers that there still may be some synthetic ingredients in those products.  *See, e.g., In re Honest Marketing Litig*, No. 16-1125 (S.D.N.Y.) (RJN Ex. 2-3); *Vincent v. People Against Dirty*, No. 16-6936 (S.D.N.Y.) (RJN Ex. 4-5); *Rapoport-Hecht v. Seventh Generation, Inc.*, No. 14-9087 (S.D.N.Y.) (RJN Ex. 6-7).

Plaintiffs also completely ignore the rest of the packaging — including the prominent disclosure on the front of the packaging just below the term "Pure Natural" or "Naturally Fresh": "**NO ALUMINUM,**

---

**PARABENS, PHTHALATES, OR PROPYLENE GLYCOL**" — that make clear the meaning of the word "natural" in the context of these deodorants.  In other words, a reasonable reading of the packaging "as a whole" makes clear that the word "natural" refers to the fact that the products do not contain the identified harsh chemicals that are typically found in deodorants.  *Freeman*, 68 F.3d at 290.  Indeed, that message is consistent with the JĀSÖN Code of Honor cited by Plaintiffs in the complaint: JĀSÖN products are made with "safe, gentle and effective ingredients," not harsh chemicals.

In analogous cases, courts have dismissed false advertising cases where the plaintiffs had focused on a single word or phrase in isolation (and ignored other phrases located close to the challenged phrase).  *See, e.g., id.* (requiring the entire advertisement to be reviewed "as a whole" and rejecting plaintiff's focus on only one phrase in the advertisement); *Henderson v. Gruma Corp*, No. 10-4173, 2011 WL 1362188, at *12 (C.D. Cal. Apr. 11, 2011) (ruling that the challenged statement "With Garden Vegetables" on a guacamole dip was "accurate in the context of the label *as a whole*") (emphasis added); *Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013) ("[I]n determining whether a reasonable consumer would have been misled by a particular advertisement, *context is crucial*.") (emphasis added).

Moreover, basic common sense would inform a reasonable consumer that deodorants designed to fight smelly scents, manufactured in factories, and sold on supermarket shelves likely have some chemical ingredients to stabilize the product.  The Supreme Court has directed district courts to "draw on . . . common sense" in "[d]etermining whether a complaint states a plausible claim for relief."  *Iqbal*, 556 U.S. at 679.  Consistent with that instruction, the Ninth Circuit has held that false advertising lawsuits must be dismissed where the plaintiff's interpretation of a challenged labeling statement "def[ies] common sense."  *Stuart v. Cadbury Adams USA, LLC*, 458 F. App'x 689, 690 (9th Cir. 2011).  The plaintiff there latched onto to the phrase "whitens teeth" in an advertisement for Trident White gum and insisted that it misled consumers into believing that they could "whiten" their teeth solely by chewing that gum.  The Ninth Circuit affirmed the dismissal of the complaint, reasoning that the plaintiff's theory of the case "def[ied] common sense" because only an "unreasonable consumer would be confused or deceived by Cadbury's failure to clarify that Trident White gum works only if consumers continue to brush and floss regularly."  *Id.* at 691.  In other words, context matters — a reasonable consumer understands that a *gum* by itself cannot "whiten teeth,"

even if the company did not literally spell it out.  Likewise here, context matters — and a reasonable consumer understands that a mass-produced deodorant encased in a plastic container and sold in supermarkets, by its very nature, likely has some stabilizing ingredients such as those challenged in this case.

Following the "common sense" guidance provided by the Supreme Court and the Ninth Circuit, numerous district courts in the Ninth Circuit have dismissed false advertising lawsuits at the pleading stage, where the plaintiffs have adopted an absolutist or implausible reading of a single phrase in a product advertisement.  For instance, in *Barrett v. Milwaukee Electric Tool, Inc.*, the plaintiff alleged that the defendant tool manufacturer misrepresented its hammers as "100% Handcrafted," even though the defendant's production process was largely mechanized.  No. 14-1804, 2016 WL 4595947 (S.D. Cal. Jan. 26, 2016).  The court granted the defendant's motion to dismiss.  In so doing, the court reasoned that the term "100% Handcrafted" could not "be reasonably interpreted as meaning literally made by hand" and concluded that no "reasonable consumer would understand the term to mean no equipment or automated process was used to manufacture the hammers." *Id.* at *5.

Likewise, in *Werbel v. Pepsico, Inc.*, the plaintiff alleged that the labeling of Cap'n Crunch cereal was misleading because the term "Crunch Berries" suggested that the cereal derived its nutritional value from actual fruit.  No. 09-4456, 2010 WL 2673860 (N.D. Cal. July 2, 2010).  The court dismissed the plaintiff's lawsuit and characterized his claim as "[n]onsense." *Id.* at *3.  Despite the plaintiff's assertion that the "Crunch Berries" in the cereal resembled real fruit, the court made clear that these colored cereal balls "do not even remotely resemble any naturally occurring fruit of any kind." *Id.*  And because the defendant did not "represent[] that the Crunch Berries are derived from real fruit" and "clearly state[d] that [the] product is a 'SWEETENED CORN & OAT CEREAL,'" the court found that no reasonable consumer would believe that the "brightly colored balls of cereal" were made from real fruit. *Id.* at *3-4.[5]

And in *Pelayo v. Nestle USA, Inc.*, the court granted the defendant's motion to dismiss the plaintiff's

---

[5] Similarly, in *Videtto v. Kellogg USA*, another district court in California dismissed with prejudice a lawsuit alleging that the labeling of Froot Loops cereal misled consumers into believing that the cereal contained real fruit, reasoning that the allegations supporting this theory would require the court to "ignore . . . common sense."  No. 08-1324, 2009 WL 1439086, at *4 (E.D. Cal. May 21, 2009).

MOTION TO DISMISS OR STAY FIRST AMENDED CLASS ACTION COMPLAINT

claims that Buitoni pasta was deceptively labeled as "All Natural" in light of the presence of artificial ingredients. 989 F. Supp. 2d 973 (C.D. Cal. 2013). Among other things, the court rejected the plaintiff's contention that the term "natural" implied that Buitoni pasta was "produced or existing in nature" and "not artificial or manufactured." *Id.* at 978. The court held that no reasonable consumer would believe that Buitoni pastas met this standard because "they are a product manufactured in mass . . . and the reasonable consumer is aware that Buitoni pastas are not springing fully-formed from Ravioli trees and Tortellini bushes." *Id.* (citations and internal quotation marks omitted).

Courts outside the Ninth Circuit have likewise rejected consumer lawsuits when the plaintiff's interpretation of the term "natural," as used in a mass-produced and shelf-stable product, defied reasonable consumer expectations and common sense. *See, e.g.*, *Kelly v. Cape Cod Potato Chip Co.*, 81 F. Supp. 3d 754, 759-60 (W.D. Mo. 2015) (dismissing lawsuit challenging packaged potato chips as "all natural" and ruling that "no reasonable consumer could possibly believe that" Cape Code Potato Chips were natural because "they are manufactured in mass" and are "processed foods"); *In re 100% Grated Parmesan Cheese Mktg. & Sales Practices Litig.*, No. 16-5802, 2017 WL 3642076, at *6-7 (N.D. Ill. Aug. 24, 2017) (dismissing lawsuit premised on inclusion of cellulose and potassium sorbate in packaged, pre-grated parmesan cheese and emphasizing that "[t]he products are packaged and shelf-stable at room temperature, a quality that reasonable consumers know is not enjoyed by pure cheese"); *Veal v. Citrus World, Inc.*, No. 12-801, 2013 WL 120761, at *4 n.4 (N.D. Ala. Jan. 8, 2013) (dismissing lawsuit challenging use of "unnatural" flavoring and aroma in packaged "fresh squeezed" orange juice and noting that, "[a]s a matter of common sense, whatever is in a container on a store shelf with an expiration date some weeks hence cannot contain 'fresh' anything").

Here, Plaintiffs allege that they were deceived because they focused on a single term, "natural," and read that word to mean that the deodorants "did not contain synthetic chemicals" whatsoever. FAC ¶¶ 13-14. But like the plaintiffs' claims in *Stuart*, *Werbel*, *Videtto*, *Barrett*, *Pelayo*, *Kelly*, *Grated Parmesan*, *Veal*, and numerous other cases, Plaintiffs' claims fail because they defy common sense. Despite Plaintiffs' insistence to the contrary, no reasonable consumer would believe that a shelf-stable deodorant stick made

in factories and encased in plastic containers was entirely free of "artificial" or "synthetic" ingredients, especially where the product was not labeled as "all natural" or "100% natural."

**B.    Any mistaken belief over whether deodorants are completely free of any chemicals whatsoever would be dispelled by reviewing the packaging as a whole.**

As explained above, the full disclosures on the packaging, along with basic common sense, make clear that the JĀSÖN deodorants have some synthetic ingredients, even though they do not contain harsh chemicals commonly used in other products.  At best, the most that Plaintiffs can muster is that they subjectively believed that the terms "Naturally Fresh," "Pure Natural," or "Natural Pioneer Since 1959" were potentially ambiguous in the context of deodorants.

But federal courts have repeatedly held that where a product's packaging does not contain any affirmative misrepresentations and instead appear, at best, arguably ambiguous, a reasonable consumer has a duty to review the entire packaging.  And if "any potential ambiguity [about the ingredients] could be resolved by the . . . back panel of the products," then the complaint must be dismissed.  *Workman v. Plum, Inc.*, 141 F. Supp. 3d 1032, 1035-37 (N.D. Cal. 2015) (dismissing lawsuit challenging "true but allegedly deceptive . . . labels").

*Workman* is highly analogous to this case.  The plaintiff there alleged that Plum's Organics fruit puree pouches and fruit bars were deceptive because they prominently depicted high-quality ingredients, such as pumpkin, pomegranate, quinoa, and yogurt, but was predominantly made of lower-cost apple, pear, or banana puree.  *Id.* at 1034.  After reviewing the labels at issue, the court determined that "any potential ambiguity" could "be resolved by the back panel of the products, which lists all ingredients in order of predominance, as required by the FDA."  *Id.* at 1035.  As the court explained:

> One can hardly walk down the aisles of a supermarket without viewing large pictures depicting vegetable or fruit flavors, when the products themselves are largely made up of a different base ingredient.  Every reasonable shopper knows that the devil is in the details.  Moreover, any potential ambiguity could be resolved by the back panel of the products, which listed all ingredients in order of predominance, as required by the FDA.

*Id.*  Similarly here, "any potential ambiguity" about the meaning of the word "natural" in the context of deodorants "could be resolved by the back panel" of the product that provides the ingredients.  *Id.*

Another recent decision from this district, *Goldman v. Bayer AG*, highlights this principle.  No. 17-647, 2017 WL 3168525 (N.D. Cal. July 26, 2017).  There, the plaintiffs alleged that the "One A Day" brand name of Bayer's vitamins, read in combination with the "70 gummies" statement on the front of the vitamin bottle, led the plaintiffs to believe that the bottle contained 70 days' worth of vitamins.  *Id.* at *1.  According to the plaintiffs, these representations were misleading because the bottle in fact contained only 35 days' worth of vitamins since the serving size — which was disclosed on the side of the bottle — was two gummies, not one.  *Id.*  The court dismissed the plaintiffs' California and New York consumer protection claims, reasoning that it was "implausible that a reasonable consumer would purchase 'multivitamins' without even knowing what he/she was purchasing."  *Id.* at *6.  Significantly, the court held that "even if the brand name could be construed as descriptive, it does not say 'One Pill A Day.' Taken literally, the reference to One A Day could be a reference to one serving a day, one time a day, or one pill or 'gummy' a day."  *Id.* at *7.  Given that potential ambiguity, the court concluded that "[a] reasonable consumer would simply need turn the bottle slightly to see" the serving size that dispelled the plaintiffs' alleged misconception.  *Id.*

The recent decision in the *In re 100% Grated Parmesan Cheese* multidistrict litigation, which contains a detailed examination of false advertising case law in California and elsewhere, is also highly instructive.  There, the plaintiffs alleged that they were misled by the "100% Grated Parmesan Cheese" labels on various parmesan cheese products because the products contained cellulose powder and potassium sorbate, and therefore cheese was not "100%" of the ingredients.  2017 WL 3642076, at *1-2.  In contrast, the defendants said that the term was accurate because it signified that it contained only parmesan cheese (and not other types of cheese, such as processed American cheese).  *Id.* at *6.

After surveying the applicable law in California and elsewhere, the court found that the "principles [espoused by the courts] yield this rule: where a plaintiff contends that certain aspects of a product's packaging are misleading in isolation, but an ingredient label or other disclaimer would dispel any confusion, the crucial issue is whether the misleading content is ambiguous; if so, context can cure the

ambiguity and defeat the claim." *Id.* at *5.  The court noted that "[t]his distinction rests on the principle that, when product descriptions are merely vague or suggestive, '[e]very reasonable shopper knows the devil is in the details.'" *Id.* at *6 (quoting *Workman*, 141 F. Supp. 3d at 1035).  Applying this well-established case law to the plaintiffs' claims, the court found that the "100% Grated Parmesan Cheese" label was ambiguous because, while it "might be interpreted as saying that the product is 100% cheese and nothing else, it also might be an assertion that 100% of the cheese is parmesan cheese, or that the parmesan cheese is 100% grated." *Id.*  Given the ambiguity of the allegedly misleading label, the court dismissed the complaint because the plaintiffs' claims were "doomed by the readily accessible ingredient panels on the products that disclose the presence of non-cheese ingredients." *Id.*

Likewise here, even assuming that a reasonable consumer could consider the word "natural" ambiguous in the context of packaged deodorants, it would not be deceptive because the "readily accessible ingredient panels on the product[]" would "disclose" the fact that the deodorants have the chemicals to which Plaintiffs object. *Id.*  Therefore, because "any potential ambiguity could be resolved by the . . . back panel of the products," Plaintiffs cannot plausibly allege that the term "natural," as used on the JĀSÖN deodorant products, is likely to mislead a reasonable consumer.  *Workman*, 141 F. Supp. 3d at 1035; *see also Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 938 (7th Cir. 2001) (affirming dismissal of claim under analogous Illinois consumer fraud statute where "information available to" the plaintiff would "dispel" any allegedly misleading implication from the product label).  Absent any plausible allegation of deception, this Court should dismiss Plaintiffs' lawsuit.

## II.   Alternatively, This Court Should Stay This Lawsuit in Deference to the FDA's Ongoing Regulatory Review of the Use of the Term "Natural."

This Court also has the option of staying this case under the primary jurisdiction doctrine in light of the ongoing FDA regulatory review of the meaning of the word "natural."

In order to promote the "proper relationship between the courts and administrative agencies charged with particular regulatory duties," the primary jurisdiction doctrine is applied when enforcement of a claim "requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body." *United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 63–64 (1956).

1   Application of the primary jurisdiction doctrine "is a matter [of] the court's discretion."  *Syntek*

2   *Semiconductor Co. v. Microchip Tech. Inc.*, 307 F.3d 775, 781 (9th Cir. 2002).  When exercising its

3   discretion, this Court must determine whether there is: "(1) [a] need to resolve an issue that (2) has been

4   placed by Congress within the jurisdiction of an administrative body having regulatory authority (3)

5   pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4)

6   requires expertise or uniformity in administration."  *Clark v. Time Warner Cable*, 523 F.3d 1110, 1115

7   (9th Cir. 2008) (citing *Syntek*, 307 F.3d at 781).

8         Here, if it does not dismiss the complaint in its entirety, the Court should stay the lawsuit in light

9   of the FDA's current rulemaking regarding the use of the word "natural."  In November 2015, the FDA

10  began actively reviewing "the use of the term 'natural' in the labeling of food products. FDA, *Use of the*

11  *Term "Natural" in the Labeling of Human Food Products; Request for Information and Comments* 80

12  Fed. Reg. 69905, 69905 (Nov. 12, 2015) (RJN Ex. 8).  The FDA decided to initiate regulatory review of

13  the use of the word "natural" because of the spate of "litigation between private parties" over the meaning

14  of the word "natural."  *Id.* at 69905, 69907.  By the close of the comment period, the FDA had received

15  over 7,600 comments from the public and companies.  *See* Docket Folder Summary, *Use of the Term*

16  *"Natural" in the Labeling of Human Food Products*, Docket No. FDA-2014-N-1207 (RJN Ex. 9).  Recent

17  comments by Congress — which has oversight over the FDA — also suggest that the agency is actively

18  engaged in the rulemaking process.  In a July 17, 2017 report, the House Committee on Appropriations

19  "commend[ed]" the FDA for its efforts to "defin[e] the term 'natural' and regulat[e] its use[.]"  H.R. Rep.

20  No. 115-232, at 72 (July 17, 2017) (RJN Ex. 10).  The Committee emphasized the importance of this

21  review, explaining that the FDA's efforts would establish "a uniform national standard" for the labeling

22  claim and provide "certainty about the meaning of the term."  *Id.*

23        In light of this active regulatory review process, the Ninth Circuit last year directed a district court

24  to stay a case alleging that Chobani deceptively and unlawfully labels its yogurt as "natural" in violation

25  of FDA regulations "until such time as the [FDA] completes its proceedings" on the use of the term

26  "natural" in food labeling.  *Kane v. Chobani, LLC*, 645 F. App'x 593, 594 (9th Cir. 2016).  The Court held

27  that "[t]he delineation of the scope and permissible usage" of this term "implicates technical and policy

28

1    questions that should be addressed in the first instance by the agency with regulatory authority over the

2    relevant industry rather than the judicial branch" and explained that a stay would conserve judicial

3    resources.  *Id.*.  Numerous district courts in the Ninth Circuit have followed *Kane* and stayed "natural"

4    cases pending the FDA's determination.  *See, e.g.*, *Viggiano v. Johnson & Johnson*, No. 14-7250, 2016

5    WL 5110500, at *2-3 (C.D. Cal. June 21, 2016) (holding that *Kane* compelled a stay of an action

6    challenging "natural" labels on Nectresse sweetener); *Mains v. Whole Foods Market, Inc.*, No. 12-5652,

7    2016 WL 5791414, at *2 n.2 (N.D. Cal. Apr. 18, 2016) (finding that *Kane* provided "a basis to stay" a case

8    challenging "all natural" and "natural" labels).

9         Here, as in the cases discussed above, efficiency strongly weighs in favor of invoking the primary

10   jurisdiction doctrine if this lawsuit is permitted to proceed past the pleading stage.  As the Ninth Circuit

11   put it, "[d]etermining what chemical compounds may be advertised as natural on . . . product labels is 'a

12   particularly complicated issue that Congress has committed to' the FDA."  *Astiana v. Hain Celestial Grp.,*

13   *Inc.*, 783 F.3d 753, 761 (9th Cir. 2015).  While the FDA's regulatory review is focused on food products,

14   its guidance may still be useful here because the FDA also has oversight over personal care products and

15   because many of the ingredients challenged in "all natural" food cases are also used in personal care

16   products, including the deodorants at issue here.  *Compare* FAC ¶ 7 (challenging the use of glycerin in

17   JĀSÖN deodorant products) *with* 21 CFR § 182.1320 (FDA regulation providing that glycerin is generally

18   recognized as safe for use in food products).  Thus, the FDA's "expert advice" on the use of the term

19   "natural" on product labels may "be useful to the court in considering this lawsuit."  *Astiana*, 783 F.3d at

20   762.  Finally, awaiting "expert advice" from the FDA may "ensure uniformity in administration of the

21   comprehensive regulatory regime established by the FDCA," and ensure that this particular case is resolved

22   efficiently.  *See id.* at 761.  On the other hand, proceeding with this matter without the benefit of the FDA's

23   guidance on "natural" labels risks inconsistency and the potential that the Court and the parties will need

24   to re-visit or re-do work they may perform in the coming months.

25   **III.    Plaintiffs Fail to State a Claim Against Hain Celestial.**

26        Plaintiffs' First Amended complaint now names both JĀSÖN, as well as its parent company Hain

27   Celestial, as defendants.  But despite the FAC's frequent references to "Defendants'" conduct, Plaintiffs

28

have not alleged facts sufficient to show that Hain Celestial is liable for the alleged acts of its subsidiary, JĀSÖN.

"As a general principle, corporate separateness insulates a parent corporation from liability created by its subsidiary, notwithstanding the parent's ownership of the subsidiary." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1070 (9th Cir. 2015) (citing *United States v. Bestfoods*, 524 U.S. 51, 61 (1998)); *accord N. Natural Gas Co. v. Superior Court*, 64 Cal. App. 3d 983, 991 (1976) ("A parent corporation is not liable . . . for the tortious acts of its subsidiary simply because it is a wholly owned subsidiary."). And as numerous courts have made clear, the "federal pleading standards require the presentation of factual allegations sufficient to state a plausible claim *as to each defendant.*" *Myers v. Winn Law Grp., APC*, No. 11-2372, 2012 WL 5187771, at *2 (E.D. Cal. Oct. 17, 2012) (emphasis added) (citing *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998)); *see also In re iPhone Application Litig.*, No. 11-2250, 2011 WL 4403963, at *8 (N.D. Cal. Sept. 20, 2011) ("Plaintiffs' failure to allege what role each Defendant played in the alleged harm makes it exceedingly difficult, if not impossible, for individual Defendants to respond to Plaintiffs' allegations . . . Plaintiffs must identify what action each Defendant took that caused Plaintiffs' harm, without resort to generalized allegations against Defendants as a whole.").

Here, as the FAC concedes, Hain Celestial and JĀSÖN are separate companies that are incorporated in separate states. *See* FAC ¶¶ 15-16 (alleging that JĀSÖN is incorporated in California and that Hain Celestial is incorporated in New York). As the labeling of the deodorant sticks makes clear, all of the challenged deodorant sticks are sold under the JĀSÖN brand. *See id.* ¶¶ 23-24. And while Plaintiffs attempt to attribute the claim that JĀSÖN products contain "only the purest, gentlest ingredients" to "Defendants," the FAC makes clear that this statement appears on JĀSÖN's website, not Hain Celestial's. *See id.* ¶ 21 & n.4. Indeed, despite its frequent references to "Defendants," the FAC is entirely bereft of any factual allegations suggesting that Hain Celestial was involved in producing, advertising, or selling the six deodorant sticks at issue. Accordingly, absent any plausible allegation that Hain Celestial was involved

1   in the conduct alleged in the FAC, this Court should dismiss Plaintiffs' claims against Hain Celestial.[6]  *See*

2   *Lane v. Vitek Real Estate Indus. Grp.*, 713 F. Supp. 2d 1092, 1101-02 (E.D. Cal. 2010) (holding that

3   allegations that "lump the actions of defendants together" are insufficient to state a plausible claim).

4   **IV.    Plaintiffs' Claims Also Fail for Independent, Claim-Specific Reason**

5          As explained above, all of Plaintiffs' claims are fatally flawed because Plaintiffs do not — and

6   cannot — allege that the labeling of the JĀSÖN deodorant products is likely to deceive a reasonable

7   consumer.  But in addition to this common defect, all six of Plaintiffs' claims fail for independent reasons.

8                  **A.       Plaintiffs' UCL, FAL, CLRA, and fraud claims do not satisfy Rule 9(b).**

9          As the Ninth Circuit has made clear, Plaintiffs' claims under the UCL, FAL, and CLRA, as well as

10  their claim for common-law fraud, are subject to Rule 9(b).  *Kearns v. Ford Motor Co.*, 567 F.3d 1120,

11  1125 (9th Cir. 2009) (holding that Rule 9(b) applies to UCL, FAL, and CLRA claims arising from a

12  "unified course of fraudulent conduct").

13         Because the gravamen of Plaintiffs' complaint is that consumers paid a price premium by virtue of

14  JĀSÖN's allegedly deceptive labeling, Rule 9(b) requires that Plaintiffs allege with particularity that they

15  suffered economic injury in reliance on the alleged misrepresentations.  *See, e.g.*, *Letizia v. Facebook Inc.*,

16  --- F. Supp. 3d ----, 2017 WL 3006950, at *5 (N.D. Cal. 2017) (noting that allegations of actual reliance

17  are subject to "Rule 9(b)'s heightened pleading requirements"); *In re Countrywide Fin. Corp. Secs. Litig.*,

18  588 F. Supp. 2d 1132, 1198 (C.D. Cal. 2008) ("[R]eliance . . . is subject to the pleading requirements of

19  Rule 9(b) because it is one of the 'circumstances constituting fraud' . . . .").  And because this case is

20  predicated on a "price premium" theory of injury, Plaintiffs must also allege with particularity that they

21  paid a "premium [for the products] due to the alleged misrepresentation."  *Bailey v. Kind, LLC*, No. 16-

22  168, 2016 WL 3456981, at *6 (C.D. Cal. June 16, 2016).

23         Plaintiffs have not met this standard.  The thesis of Plaintiffs' complaint is that JĀSÖN was able to

24  charge a "substantial price premium" by touting the JĀSÖN deodorant products as "natural."  FAC ¶¶ 13-

25

26  [6] In addition to their failure to allege any facts plausibly suggesting that Hain Celestial is directly liable for
    the conduct alleged in the FAC, Plaintiffs do not even attempt to allege that Hain Celestial is liable under

27  another theory – for instance, because JĀSÖN acted as Hain Celestial's agent or because JĀSÖN is the

28  alter ego of Hain Celestial.

14.  But while Plaintiffs' FAC now alleges the approximate amount they paid for the JĀSÖN deodorant products, they have not alleged any of the other factual predicates for this theory, including the identity or the cost of comparable deodorant products (which would establish the benchmark price relative to which JĀSÖN allegedly charged a price premium) or the size of the price premium they allegedly paid.  Because Plaintiffs have not alleged — let alone with the particularity required by Rule 9(b) — that they suffered economic injury in reliance on the term "natural," this Court should dismiss their UCL, CLRA, FAL, and common-law fraud claims.

### B.    Plaintiffs fail to state a claim for breach of express warranty.

"To state a claim for breach of express warranty under California law, a plaintiff must allege (1) the exact terms of the warranty; (2) reasonable reliance thereon; and (3) a breach of warranty which proximately caused plaintiff's injury."  *Nabors v. Google, Inc.*, No. 10-3897, 2011 WL 3861893, at *4 (N.D. Cal. Aug. 30, 2011).

Here, Plaintiffs allege that JĀSÖN "expressly warranted that the Products are 'natural'" and that "[t]he Products do not conform to the express warranty because they contain ingredients that are unnatural and synthetic."  FAC ¶¶ 64, 66.  But these allegations cannot give rise to a claim for breach of express warranty because they do not describe the "exact terms of the warranty," as is required to state a claim for breach of express warranty under California law.  *Nabors*, 2011 WL 3861893, at *4 (citing *Williams v. Beechnut Nutrition Corp.*, 185 Cal. App. 3d 135, 142 (1986)).

Moreover, as explained above, JĀSÖN has not breached any express warranty because the challenged labeling accurately discloses what ingredients are — and are not — in the JĀSÖN deodorant products.  Courts have routinely dismissed breach of express warranty claims in alleged mislabeling cases where the challenged labeling truthfully identifies the product's ingredients.  *See, e.g.*, *Viggiano v. Hansen Natural Corp.*, 944 F. Supp. 2d 877, 983-94 (C.D. Cal. 2013) (dismissing express warranty claim premised on term "all natural flavors" because this phrase "accurately describes the product"); *McKinnis v. Kellogg USA*, No. 07-2611, 2007 WL 4766060, at *5 (C.D. Cal. Sept. 19, 2007) (dismissing express warranty claim when defendant accurately represented that its cereal contained "natural fruit flavors").  This Court should likewise dismiss Plaintiffs' breach of express warranty claim.

1

### C.   Plaintiffs' unjust enrichment claim also fails.

2    Finally, Plaintiffs fail to allege facts to support their claim that JĀSÖN was "unjustly enriched."

3   Their theory of unjust enrichment is that the JĀSÖN deodorant products were falsely advertised as

4   "natural."   But because no reasonable consumer would be deceived by the challenged labeling, Plaintiffs

5   cannot show that JĀSÖN has been "unjustly enriched" by retaining the monies paid by the putative class

6   to purchase the products.  *See, e.g.*, *Marilao v. McDonald's Corp.*, 632 F. Supp. 2d 1008, 1013 (S.D. Cal.

7   2009) (dismissing claim for unjust enrichment predicated on same allegations as UCL claim because

8   "Plaintiff allege[d] no wrongful conduct" by the defendant); *McKinnis*, 2007 WL 4766060, at *6

9   (dismissing unjust enrichment claim where "Plaintiffs . . . failed to state any substantive claim" that the

10   packaging of Froot Loops would mislead a reasonable consumer).  This Court should accordingly dismiss

11   Plaintiffs' claim for unjust enrichment.

12   ### V.   Plaintiffs Lack Standing to Assert Common-Law Claims on Behalf of a Nationwide Class.

13    In addition to their UCL, FAL, and CLRA claims, which they assert only on behalf of putative class

14   members who reside in or purchased the products in California, Plaintiffs also seek to assert claims for

15   fraud, breach of express warranty, and unjust enrichment on behalf of a nationwide class.  To the extent

16   that the Court does not dismiss these claims outright, it should dismiss Plaintiffs' claims on behalf of

17   putative class members outside of California for lack of standing.

18    As this Court has made clear, "standing is claim- and relief-specific, such that a plaintiff must

19   establish Article III standing for each of her claims and for each form of relief sought."  *In re Carrier IQ,*

20   *Inc., Consumer Privacy Litig.*, 78 F. Supp. 3d 1051, 1064-65 (N.D. Cal. 2015) (internal quotations omitted)

21   (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006)).  In a class action, "[a]t least one named

22   plaintiff must have standing with respect to each claim the class representatives seek to bring."  *In re*

23   *Ditropan XL Antitrust Litig.*, 529 F. Supp. 2d 1098, 1107 (N.D. Cal. 2007).   Accordingly, when "a

24   representative plaintiff is lacking for a particular state, all claims based on *that* state's laws are subject to

25   dismissal."  *In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133, 1164 (N.D. Cal. 2009) (citing

26   *Ditropan*, 529 F. Supp. 2d at 1106-07.

27

28

Here, both of the named plaintiffs are residents of California and allege that they purchased the JĀSÖN deodorant products in California.  FAC ¶¶ 13-14.  Because neither of the named plaintiffs resides in or suffered an injury in any state other than California, Plaintiffs "lack standing to assert claims based on those states' laws."  *Fenerjian v. Nongshim Co.*, 72 F. Supp. 3d 1058, 1082-83 (N.D. Cal. 2014); *see also Carrier IQ*, 78 F. Supp. 3d at 1075 (holding that "named Plaintiffs do not have standing to assert claims from states in which they do not reside or did not purchase [the products at issue]").  The fact that Plaintiffs do not assert any claims under the consumer protection statutes of other states is irrelevant, as Article III standing requirements apply with equal force to both statutory and common-law claims.  *See Corcoran v. CVS Health Corp.*, No. 15-3504, 2016 WL 4080124, at *3 (N.D. Cal. July 29, 2016) ("Plaintiffs do not have standing to bring the common law claims under the laws of the . . . states to which they have alleged no connection.  The common law claims brought based on the laws of those states are therefore dismissed."); *Flash Memory*, 643 F. Supp. 2d at 1163-64 (dismissing unjust enrichment claims asserted under laws of states in which no named plaintiff resided).  This Court should therefore dismiss Plaintiffs' claims on behalf of putative class members outside of California for lack of standing.

## CONCLUSION

For the foregoing reasons, this Court should dismiss Plaintiffs' First Amended Class Action Complaint with prejudice or, in the alternative, stay this lawsuit.


 Dated:  November 3, 2017                                    JENNER & BLOCK LLP

                                                            By: /s/  Kenneth K. Lee
                                                                  Kenneth K. Lee

                                                            Attorneys for Defendants
                                                            The Hain Celestial Group, Inc., and
                                                            JĀSÖN Natural Products, Inc.

MOTION TO DISMISS OR STAY FIRST AMENDED CLASS ACTION COMPLAINT