**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Joel D. Smith (State Bar No. 244902)
Yeremey O. Krivoshey (State Bar No. 295032)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail:  ltfisher@bursor.com
          jsmith@bursor.com
          ykrivoshey@bursor.com

**NATHAN & ASSOCIATES, APC**
Reuben D. Nathan (State Bar No. 208436)
600 W. Broadway, Suite 700
San Diego, California 92101
Telephone; (619)272-7014
Facsimile:  (619)330-1819
E-Mail: rnathan@nathanlawpractice.com

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MAKINDE PECANHA and SHAUN RAY BELL, on behalf of themselves and all others similarly situated,<br><br>     Plaintiffs,<br><br>  v.<br><br>THE HAIN CELESTIAL GROUP, INC. and JĀSÖN NATURAL PRODUCTS, INC.,<br><br>    Defendants. | Case No. 3:17-cv-04517 EMC<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISMISS OR STAY FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>Date:  January 18, 2018<br>Time:  1:30 p.m.<br>Courtroom:  5, 17th Floor<br><br>Honorable Edward M. Chen |

1

**TABLE OF CONTENTS**

2

PAGE(S)

3   I.      INTRODUCTION ............................................................................................................1

4   II.     THE COURT SHOULD DENY DEFENDANTS' MOTION TO DISMISS .....................2

5           A.     Plaintiffs' Allegations Satisfy Rule 8 and the Reasonable Consumer
                   Standard ..............................................................................................................2

6                  1.      Under *Williams* and *Balser*, Whether the Labeling Has the
                           Capacity to Deceive or Confuse Reasonable Consumers Is a

7                          Factual Issue Not Susceptible to Resolution on the Pleadings .....................2

8                  2.      Defendants' Arguments That the Ingredients List or Other
                           Labeling Clears Up Any Misconception is Contrary to

9                          *Williams* .....................................................................................................5

           B.     The Court Should Deny Defendants' Request to Stay this Action ...........................8

10                 1.      The FDA's Request for Comments Applies Only to Food, and
                           Speculation That the FDA Might Provide Guidance on

11                         Cosmetics Cannot Support a Stay ...............................................................9

12                 2.      Defendants' Authorities Do Not Support a Stay .........................................11

13                 3.      Defendants' Speculation that "Natural" Food Regulations
                           "May Be Useful" Here Does Not Support a Stay .......................................12

14          C.     Plaintiffs Adequately Allege Claims Against Defendant Hain
                   Celestial .............................................................................................................13

15          D.     Defendants' Arguments for Dismissal of Specific Claims Lack Merit...................14

16                 1.      Plaintiffs' Allegations Satisfy Rule 9(b) ...................................................14

                   2.      Plaintiffs Sufficiently State an Express Warranty Claim ...........................16

17                 3.      Plaintiffs Sufficiently State an Unjust Enrichment Claim...........................17

18          E.     The Court Should Reject Defendants' Arguments for Dismissal of
                   the Nationwide Class Allegations ........................................................................17

19                 1.      Rule 12(b)(6) Does Not Permit Dismissal of Class
                           Allegations................................................................................................17

20                 2.      Defendants' Arguments Are Contrary to the Ninth Circuit's
                           Decision in *Melendres* .............................................................................18

21

22  III.    CONCLUSION .............................................................................................................21

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Astiana v. Ben & Jerry's Homemade, Inc.,*
2011 WL 2111796 (N.D. Cal. May 26, 2011) ............................................................................. 14

*Astiana v. Dreyer's Grand Ice Cream, Inc.,*
2012 WL 2990766 (N.D. Cal. July 20, 2012) ...................................................................... 1, 3, 6

*Astiana v. Hain Celestial Grp., Inc.,*
783 F.3d 753 (9th Cir. 2015) ......................................................................................... 9, 11

*Bailey v. Kind, LLC,*
2016 WL 3456981 (C.D. Cal. June 16, 2016) ...................................................................... 15, 16

*Balser v. Hain Celestial Grp., Inc.,*
640 F. App'x 694 (9th Cir. 2016) ............................................................................................ 3

*Barrett v. Wilwaukee Electric Tool, Inc.,*
2016 WL 4595947 (S.D. Cal. Jan. 26, 2016) ........................................................................... 5

*Barron v. Snyder's-Lance, Inc.,*
2015 WL 11182066 (S.D Fla. Mar. 20, 2015) ........................................................................ 8

*Bazuaye v. I.N.S.,*
79 F.3d 118 (9th Cir. 1996) ................................................................................................... 20

*Bober v. Glaxo Wellcome PLC,*
246 F.3d 934 (7th Cir. 2001) ............................................................................................... 7

*Bohac v. Gen. Mills, Inc.,*
2014 WL 1266848 (N.D. Cal. Mar. 26, 2014) ....................................................................... 7

*Brazil v. Dole Packaged Foods, LLC,*
660 F. App'x 531 (9th Cir. 2016) .................................................................................. 3, 9, 12

*Brenner v. Procter & Gamble Co.,*
2016 WL 8192946 (C.D. Cal. Oct. 20, 2016) ................................................................*Passim*

*Brown v. The Hain Celestial Grp., Inc.,*
913 F. Supp. 2d 881 (N.D. Cal. 2012) ................................................................................ 16

*Bruton v. Gerber Prods. Co.,*
2014 WL 172111 (N.D. Cal. Jan. 15, 2014) ........................................................................ 19

*Casas v. Victoria's Secret Stores, LLC,*
  2014 WL 12708972 (C.D. Cal. Oct. 20, 2014) ............................................................ 18

*Corcoran v. CVS Health Corp., Inc.,*
  2016 WL 4080124 (N.D. Cal. July 29, 2016) ............................................................ 21

*Cruz v. Sky Chefs, Inc.,*
  2013 WL 1892337 (N.D. Cal. May 6, 2013) ............................................................ 18

*Delacruz v. Cytosport,*
  2012 WL 2563857 (N.D. Cal. June 28, 2012) ............................................................ 13

*Ehret v. Uber Technologies, Inc.,*
  68 F. Supp. 3d 1121 (N.D. Cal. 2014) ............................................................ 16

*Ellsworth v. U.S. Bank, N.A.,*
  2014 WL 2734953 (N.D. Cal. June 13, 2014) ............................................................ 19

*Fagan v. Neutrogena Corp.,*
  2014 WL 92255 (C.D. Cal. Jan. 8, 2014) ............................................................ 4, 5, 6, 8

*Fallick v. Nationwide Mut. Ins. Co.,*
  162 F.3d 410 (6th Cir. 1998) ............................................................ 19

*Forcellati v. Hyland's Inc.,*
  876 F. Supp. 2d 1155 (C.D. Cal. 2012) ............................................................ 20

*Freeman v. Time, Inc.,*
  68 F.3d 285 (9th Cir. 1995) ............................................................ 4, 5

*Garcia v. Kashi Co.,*
  43 F. Supp. 3d 1359 (S.D. Fla. 2014) ............................................................ 8

*Gasser v. Kiss My Face, LLC,*
  2017 WL 4773426 (N.D. Cal. Oct. 23, 2017) ............................................................ *Passim*

*Gillibeau v. City of Richmond,*
  417 F.2d 426 (9th Cir.1969) ............................................................ 17, 18

*Goldemberg v. Johnson & Johnson Cons. Cos., Inc.,*
  8 F. Supp. 3d 467 (S.D.N.Y. 2014) ............................................................ 8

*Goldman v. Bayer AG,*
  2017 WL 3168525 (N.D. Cal. July 26, 2017) ............................................................ 7

*Gordon v. The Hain Celestial Group, Inc.,*
  2017 WL 213815 (S.D.N.Y. Jan. 18, 2017) ............................................................ 2, 13

*In re 5-hour ENERGY Marketing and Sales Litig.*,
   2014 WL 5311272 (C.D. Cal. Sept. 4, 2014) ............................................................... 19

*In re 100% Grated Parmesan Cheese Mktg. & Sales Practices Litig.*,
   2017 WL 3642076 (N.D. Ill. Aug. 24, 2017) ................................................................. 7

*In re Carrier IQ, Inc.*,
   78 F. Supp. 3d 1051 (N.D. Cal. 2015) .................................................................. 20, 21

*In re Hydroxycut Mktg. and Sales Practices Litig.*,
   801 F. Supp. 2d 993 (S.D. Cal. 2011) ....................................................................... 19

*In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Prods. Liability Litig*,
   2017 WL 3058563 (N.D. Cal. July 19, 2017) ............................................................. 19

*Jepson v. Ticor Title Ins. Co.*,
   2007 WL 2060856 (W.D. Wash. May 1, 2007) ........................................................... 19

*Johnson v. Triple Leaf Tea Inc.*,
   2014 WL 4744558 (N.D. Cal. Sept. 23, 2014) ........................................................... 13

*Jones v. ConAgra Foods, Inc.*,
   912 F. Supp. 2d 889 (N.D. Cal. 2012) ....................................................................... 12

*Jou v. Kimberly-Clark Corp.*,
   2013 WL 6491158 (N.D. Cal. Dec. 10, 2013) ........................................................ 4, 6, 7, 13

*Kane v. Chobani, LLC*,
   645 Fed. App'x 593 (9th Cir. 2016) ....................................................................... 11, 12

*Krommenhock v. Post Foods, LLC*,
   2017 WL 2378029 (N.D. Cal. June 1, 2017) ................................................................. 7

*Langan v. Johnson & Johnson Consumer Companies, Inc.*,
   95 F. Supp. 3d 284 (D. Conn. 2015) ....................................................................... 5, 8

*Madenlian v. Flax USA, Inc.*,
   2014 WL 7723578 (C.D. Cal. Mar. 31, 2014) ........................................................... 17

*Mains v. Whole Foods Market, Inc.*,
   2016 WL 5791414 (N.D. Cal. Apr. 18, 2016) ........................................................... 11

*Martin v. Tradewinds Bev. Co.*,
   2017 WL 1712533 (C.D. Cal. Apr. 27, 2017) ........................................................... 12

*McKinniss v. Kellogg USA,*
  2007 WL 4762172 (C.D. Cal. Sept. 19, 2007) ................................................................ 17

*Melendres v. Arpaio,*
  784 F.3d 1254 (9th Cir. 2015) ............................................................ 2, 18, 19, 20

*Michael v. Honest Co., Inc.,*
  2016 WL 8902574 (C.D. Cal. Dec. 6, 2016) ........................................................ 3

*Nabors v. Google, Inc.,*
  2011 WL 3861893 (N.D. Cal. Aug. 30, 2011) ...................................................... 17

*Nelson v. Xacta 3000 Inc.,*
  2010 WL 1931251 (D.N.J May 12, 2010) ............................................................ 15

*Parino v. BidRack, Inc.,*
  838 F.Supp.2d 900 (N.D. Cal. 2011) .................................................................. 17

*Pelayo v. Nestle USA, Inc.,*
  989 F.Supp.2d 973 (C.D. Cal. 2013) .................................................................... 7

*Rahman v. Mott's LLP,*
  2014 WL 1379655 (N.D. Cal. Apr. 8, 2014) ........................................................ 9

*Rhoades v. Avon Prod., Inc.,*
  504 F.3d 1151 (9th Cir. 2007) ............................................................................ 10

*Riva v. Pepsico, Inc.,*
  82 F. Supp. 3d 1045 (N.D. Cal. 2015) ................................................................ 17

*Segedie v. Hain Celestial Grp. Inc.,*
  2015 WL 2158374 (S.D.N.Y. May 7, 2015) .......................................................... 8

*Segedie v. Hain Celestial Grp., Inc.,*
  2015 WL 2168374 (S.D.N.Y. May 7, 2015) .......................................................... 9

*Sosna v. Iowa,*
  419 U.S. 393 (1974).............................................................................................. 19

*Spokeo, Inc. v. Robins,*
  136 S. Ct. 1540 (2016)........................................................................................ 20

*Stotz v. Mophie Inc.,*
  2017 WL 1106104 (C.D. Cal. Feb. 27, 2017) ...................................................... 19

*Surzyn v. Diamond Foods, Inc.,*
  2014 WL 2212216 (N.D. Cal. May 28, 2014) ........................................................ 8

*Swearingen v. Late July Snacks LLC,*
    2017 WL 1806483 (N.D. Cal. May 5, 2017) ................................................................ 6, 14

*Tsan v. Seventh Generation, Inc.,*
    2015 WL 6694104 (N.D. Cal. Nov. 3, 2015) ...................................................................... 7

*Videtto v. Kellogg USA,*
    2009 WL 1439086 (E.D. Cal. May 21, 2009) .................................................................... 5

*Viggiano v. Hansen Natural Corp.,*
    944 F. Supp. 2d 877 (C.D. Cal. 2013) ............................................................................. 16

*Viggiano v. Johnson & Johnson,*
    2015 WL 12860480 (C.D. Cal. June 12, 2015) ................................................... 11, 19, 20

*Warth v. Seldin,*
    422 U.S. 490 (1975) ........................................................................................................ 20

*Werbel v. Pepsico, Inc.,*
    2010 WL 2673860 (N.D. Cal. July 2, 2010) ...................................................................... 5

*Williams v. Gerber Prod. Co.,*
    552 F.3d 934 (9th Cir. 2008) .................................................................................*Passim*

*Workman v. Plum, Inc.,*
    141 F. Supp. 3d 1032 (N.D. Cal. 2015) ............................................................................. 7

**RULES**

Fed. R. Civ. P. 9(b) .................................................................................................................. 2

Fed. R. Civ. P. 12(b)(6) ....................................................................................................... 2, 4

**REGULATIONS**

58 Fed. Reg. 2302407 (Jan. 6, 1993) ....................................................................................... 9

75 Fed. Reg. 63552 (Oct. 15, 2010) ................................................................................... 8, 13

1    Plaintiffs Makinde Pecanha and Shaun Ray Bell respectfully submit this opposition to the

2  Motion to Dismiss or Stay filed by Defendants The Hain Celestial Group, Inc. ("Hain Celestial")

3  and Jāsön Natural Products, Inc. ("Jāsön Natural").

4  **I.    INTRODUCTION**

5    This is a simple case.  Plaintiffs allege that Defendants manufacture, advertise and sell six

6  deodorant products labeled as "Naturally Fresh," "Pure Natural Deodorant," "Pure Natural

7  Deodorant Stick," and/or "Natural Pioneer Since 1959."  First Amended Complaint ("FAC"), ¶¶ 1-

8  5.  The front packaging of the deodorant products reinforces the impression that the products are all

9  natural with images of leaves and flowers.  *Id.* at ¶ 6.  In fact, however, the products contain several

10  synthetic, non-natural ingredients including tocopheryl acetate, glycerin and ethylhexylglycerin.

11  *Id.* at ¶ 7.

12    Defendants' arguments for dismissal fall into five general categories.  First, Defendants

13  contend that the Court can conclude, without evidence, that no reasonable consumer could be

14  deceived or confused by the labeling.  There is a large body of law on "natural" labeling in this

15  Circuit, and Defendants cite almost none of it.  *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 938

16  (9th Cir. 2008) holds that whether "natural" labeling is deceptive, misleading, or unfair is

17  ordinarily a question of fact, and it is only "the rare situation" in which that issue can be resolved

18  on the pleadings.  Dozens of courts, including this Court in *Astiana v. Dreyer's Grand Ice Cream,*

19  *Inc.*, 2012 WL 2990766 (N.D. Cal. July 20, 2012), have followed *Williams* and denied motions to

20  dismiss in natural labeling cases.  Given that *Williams* involved representations similar to those at

21  issue here, this is not one of those "rare situations" where dismissal on the pleadings is permissible.

22    Second, Defendants argue that the case should be stayed indefinitely based on speculation

23  that the Food and Drug Administration might engage in some uncertain regulatory review of the

24  use of the term "natural" in cosmetic products.  As far as Plaintiffs are aware, every court to

25  consider this argument in a case involving a cosmetic product like Defendants' deodorant sticks

26  has refused to grant a stay.  *See Brenner v. Procter & Gamble Co.*, 2016 WL 8192946, at *8 (C.D.

27  Cal. Oct. 20, 2016) ("Defendant has not provided a single case where a district court in this Circuit

28

stayed a case relating to a 'natural' label on a cosmetic under the primary jurisdiction doctrine pending the outcome of these FDA proceedings.").

Third, Defendants claim that Plaintiffs have failed to adequately allege claims against Defendant Hain Celestial.  Defendants, however, ignore Plaintiffs' allegations that Hain Celestial and Jāsön Natural work together to manufacture, promote and sell the deodorant products at issue in this case.  FAC ¶¶ 4, 17.  Moreover, earlier this year, a New York district court rejected precisely the same argument Hain Celestial makes here.  *Gordon v. The Hain Celestial Group, Inc.*, 2017 WL 213815, at *8 (S.D.N.Y. Jan. 18, 2017) ("[C]ritically, plaintiff further alleges that Hain Celestial 'manufactures and sells' the Jason Natural Products allegedly purchased by plaintiff.").

Fourth, Defendants assert that Plaintiffs have failed to adequately plead their fraud-based claims consistent with FRCP 9(b) and that their claims for breach of express warranty and unjust enrichment cannot proceed.  Even upon a cursory examination, it is clear that Plaintiffs have adequately pleaded those claims and that Defendants' motion to dismiss should be denied.

Finally, Defendants argue that Plaintiffs lack standing to assert common law claims on behalf of a nationwide class.  Defendants' motion under FRCP 12(b)(6) is an improper vehicle for dismissal of class allegations, however.  Moreover, Defendants fail to cite *Melendres v. Arpaio*, 784 F.3d 1254 (9th Cir. 2015), which holds that if Plaintiffs have standing to bring their individual claims (which is not disputed here), then "the standing inquiry is concluded" and any arguments about whether they may represent other class members must wait for class certification.  *Id.* at 1261-62.

## II.   THE COURT SHOULD DENY DEFENDANTS' MOTION TO DISMISS

### A.   Plaintiffs' Allegations Satisfy Rule 8 and the Reasonable Consumer Standard

#### 1.   Under *Williams* and *Balser*, Whether the Labeling Has the Capacity to Deceive or Confuse Reasonable Consumers Is a Factual Issue Not Susceptible to Resolution on the Pleadings

Defendants first argue that Plaintiffs do not plausibly allege that the "natural" statements on the Jāsön deodorant labels are likely to deceive a reasonable consumer.  Specifically, Defendants

1  argue that the Court can rule, as a matter of law, that no reasonable consumer would be deceived or

2  confused by the representations "Naturally Fresh," Pure Natural Deodorant," "Pure Natural

3  Deodorant Stick," and "Natural Pioneer Since 1959."  *See* MTD at 6-10.  Defendants are wrong.

4          The Ninth Circuit has twice reversed dismissal on the pleadings where the defendants made

5  similar arguments in natural labeling cases.  *See Williams*, 552 F.3d at 938; *Balser v. Hain*

6  *Celestial Grp., Inc.*, 640 F. App'x 694, 696 (9th Cir. 2016).  In those decisions, the Ninth Circuit

7  held that "[w]hether a business practice is deceptive, misleading, or unfair is ordinarily a question

8  of fact to be decided by a jury," *Balser*, 640 F. App'x at 696, and that it is only "the rare situation"

9  in which that issue can be resolved on the pleadings.  *Williams*, 552 F.3d at 938-39; *see also Brazil*

10  *v. Dole Packaged Foods, LLC*, 660 F. App'x 531, 533-34 (9th Cir. 2016) (reversing summary

11  judgment for defendant in "natural" labeling case due to question of fact over the reasonable

12  consumer standard).  Thus, in *Williams*, the court explained, "the statement that [the product] was

13  made with 'fruit juice and other all natural ingredients' could easily be interpreted by consumers as

14  a claim that all the ingredients in the product were natural."  552 F.3d at 939; *see also Balser*, 640

15  Fed. App'x. at 697 ("the statements that the products were 'natural' and '100% vegetarian' could

16  be taken as a claim that no synthetic chemicals were in the products").  Defendants ask this Court

17  to make the same reversible error made by the district courts in *Williams* and *Balser*.

18          Numerous courts have followed *Williams* and denied motions to dismiss in natural labeling

19  cases.  *See Michael v. Honest Co., Inc.*, 2016 WL 8902574, at *22 (C.D. Cal. Dec. 6, 2016)

20  (collecting authorities denying motions to dismiss in natural labeling cases).  This Court is one of

21  them, having followed *Williams* and denied a motion to dismiss where the plaintiffs alleged that

22  labels such as "All Natural Ice Cream" were misleading due to the presence of synthetic

23  ingredients.  *Dreyer's Grand Ice Cream, Inc.*, 2012 WL 2990766, at *7 (rejecting the defendant's

24  argument that the phrase "All Natural Flavors" cannot plausibly mean "all natural ingredients").

25          Against this weight of authority, Defendants argue that the labeling statements "Naturally

26  Fresh," Pure Natural Deodorant," "Pure Natural Deodorant Stick," and "Natural Pioneer Since

27  1959" refer to the absence of specific chemicals, not the product as a whole.  MTD at 6-10.  Thus,

28

in Defendants' view, there is no possibility that a reasonable consumer could be deceived or confused about whether the <u>entire</u> product is 100% natural.

The flaw in that argument is that it requires the Court to resolve a question of fact about how a reasonable consumer would construe the labeling, which is precisely what *Williams* and *Balser* forbid. *See, e.g., Williams*, 552 F.3d at 938-39. In fact, the challenged statements here (*e.g.* "Pure Natural Deodorant") are not that different from the statement in *Williams* that the product was "made with 'fruit juice and other all natural ingredients.'" *Id.* at 936 (quoting labeling). *Williams* demonstrates that the fact that Defendants can propose one plausible interpretation of the labeling here cannot support dismissal because it is not the <u>only</u> plausible interpretation. *Jou v. Kimberly-Clark Corp.*, 2013 WL 6491158 (N.D. Cal. Dec. 10, 2013) is directly on point. In *Jou*, the court denied a motion to dismiss claims concerning diapers labeled as "pure & natural." *Id.* at 1. Like Defendants in this case, the defendants in *Jou* claimed that a reasonable consumer could never be misled by the "pure & natural" representation. The court rejected that argument, holding that "[w]hether a reasonable consumer would agree with Plaintiffs ('natural' means no non-natural ingredients) or with Defendant ('natural' means at least one natural ingredient among other, possibly non-natural ingredients) or with neither is not a question that can be resolved on a Rule 12(b)(6) motion." *Id.* at *7.

Similarly, in *Fagan v. Neutrogena Corp.*, 2014 WL 92255, at *2 (C.D. Cal. Jan. 8, 2014), the defendant argued on a motion to dismiss that, as a matter of law, the label "100% naturally sourced sunscreen ingredients" was not deceptive because it only referred to specific ingredients. The court rejected that argument, explaining that the reasonable consumer test "'must be evaluated from the vantage of a reasonable consumer,'" not the vantage of the defendant. *Id.* (quoting *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995)). "Defendant's argument that the representations are literally true because the term '100%' only applies to the ingredients in the products that provide protection from the sun (and not to other ingredients in the lotions that serve other purposes) rests on one possible interpretation of the language, but it is not the only possible

interpretation." *Id.* Hence, whether reasonable consumers would adopt the defendant's interpretation or the plaintiff's interpretation could not be resolved on the pleadings. *Id.*

The court reached the same conclusion in *Langan v. Johnson & Johnson Consumer Companies, Inc.*, 95 F. Supp. 3d 284, 289 (D. Conn. 2015), explaining, "it seems perfectly reasonable to me that a typical consumer might interpret the phrase '100% naturally-sourced sunscreen ingredients' on a sunscreen product label to mean that the whole product was natural. After all, the entire product—everything in the container—is applied by a consumer as a sunscreen, and it seems unlikely that a reasonable consumer would distinguish between the active 'sunscreen ingredients' and the 'non-sunscreen ingredients' inside a container." The reasoning of these cases applies equally here. As in *Fagan* and *Langan*, the entire deodorant product is applied to the skin, not just the ingredients that Defendants contend are the subject of the natural labeling.[1]

### 2. Defendants' Arguments That the Ingredients List or Other Labeling Clear Up Any Misconception Is Contrary to *Williams*

Defendants repeatedly argue that no reasonable consumer could be misled by its labeling because the ingredients are disclosed on the ingredients list on the back of the products and the front packaging states that the products contain "no aluminum, parabens, phthalates or propylene glycol." MTD at 6-10. That argument fails for three reasons.

---

[1] Defendants cite several cases that are easily distinguishable from this case. In *Werbel v. Pepsico, Inc.*, 2010 WL 2673860 (N.D. Cal. July 2, 2010), the court determined that a reasonable consumer would not be deceived into believing that "[Captain] Crunch Berry [cereal] was derived from real fruit." *Id.* at *3. The cereal balls pictured on the box were wildly colorful (*i.e.* chartreuse green and bright red) and looked nothing like fruit. *Id.* There was no fruit anywhere on the box. *Id.* In fact, the box was clearly labeled "sweetened corn and oat cereal." *Id.* Unlike the deceptive "natural" terms used on the products in this case, there was nothing on the cereal boxes in *Werbel* that could possibly deceive a reasonable consumer. *Id.* Similarly, in *Videtto v. Kellogg USA*, the box of "Froot Loops cereal" pictured Toucan Sam, a bowl of multi-colored cereal rings and used the word "Froot" not "fruit." 2009 WL 1439086, at *3. The court correctly held that consumers would not reasonably be misled into believing that the sugar cereal contained real fruit. *Id.* Finally, in *Barrett v. Wilwaukee Electric Tool, Inc.*, 2016 WL 4595947 (S.D. Cal. Jan. 26, 2016), the court dismissed a claim that certain tools were "100% handcrafted" when in fact they were made by a mechanized process. The court dismissed the case because the plaintiff was on notice that tools were manufactured by a machine and stated in the complaint that he knew that the defendant used processes "beyond what could be achieved by hand." *Id.* at 5. Those cases are a far cry from the deceptive "natural" labeling representations at issue in this case.

First, this Court has held that "under Ninth Circuit precedent . . . [a defendant] is barred from relying on the ingredient list to 'correct' a false or misleading statement on the front of its packaging." *Dreyer's Grand Ice Cream, Inc.*, 2012 WL 2990766, at *10 (citing *Williams*); *see also*, *e.g.*, *Jou*, 2013 WL 6491158, at *8 ("under *Williams*, a defendant cannot rely on disclosures on the back or side panels of the packaging to contend that any misrepresentation on the front of the packaging is excused"); *Fagan*, 2014 WL 92255, at *2  ("Defendant's alternative argument that any ambiguity is … dispelled by the explicit list of ingredients elsewhere on the product is foreclosed by [*Williams*]"); *see also Williams*, 552 F.3d at 939.  Defendants will likely argue on reply that this rule does not apply because they disagree that the front labeling is misleading.  But they do not contend that the challenged ingredients (which are only disclosed in the ingredients list) are "natural."  Therefore, this is not a case where the Court can conclude, as a matter of law, that the front and back labels are consistent.  Here again, Defendants' argument turns on a factual dispute about how consumers construe the front labeling.

Second, Defendants' argument erroneously assumes that a consumer who reads the ingredients list can discern which ingredients are natural and which are not.  This Court has held that "the 'reasonable consumer' is not necessarily a 'particularly sophisticated consumer." *Swearingen v. Late July Snacks LLC*, 2017 WL 1806483, at *4 (N.D. Cal. May 5, 2017) (internal quotation omitted).  There is no legal basis to hold, as a matter of law, that reasonable consumers know what ethylhexylglycerin, glycerine and tocopheryl acetate are, much less whether they are synthetic or natural.  In this regard, Defendants present an image of the ingredients list on page 4 of their motion to dismiss and appear to take the position that just because an ingredient is listed by a difficult-to-pronounce chemical name, it must be synthetic.  Not so.  For example, whereas ethylhexylglycerin is synthetic, allantoin and behenyl alcohol generally are not (and thus are not the basis for this lawsuit).  Defendants also acknowledge that one of the challenged ingredients here, glycerine, "exists in both organic and synthetic forms," and the ingredient list does not disclose that the glycerin in the challenged products here is synthetic.  MTD at 4; *see also* FAC ¶ 7, 17 (alleging that the glycerin Defendants use is synthetic and inconsistent with the challenged

products' "natural" labeling). These facts distinguish this matter from one of Defendants' cases, *In re 100% Grated Parmesan Cheese Mktg. & Sales Practices Litig.*, 2017 WL 3642076 (N.D. Ill. Aug. 24, 2017) ("*Parmesan Cheese*"), where the court concluded that consumers could review the ingredients list to determine whether a product labeled "100%" cheese contained anything other than cheese.

Third, the other authorities cited by Defendants do not support dismissal. Defendants rely on *Workman v. Plum, Inc.*, 141 F. Supp. 3d 1032 (N.D. Cal. 2015), and *Goldman v. Bayer AG*, 2017 WL 3168525 (N.D. Cal. July 26, 2017), but neither case involved natural labeling or an affirmative misrepresentation. *See Workman*, 141 F. Supp.3d at 1035 ("plaintiff concedes that the labels contain no affirmative misrepresentations"); *Goldman*, 2017 WL 3168525 at *9 ("One A Day® is not an affirmative representation"). Other courts have held that *Workman* and *Goldman* are distinguishable where the plaintiff alleges affirmative misrepresentations about the content of challenged products—including in one case where the plaintiff challenged natural labeling in cosmetics. *See Gasser v. Kiss My Face, LLC*, 2017 WL 4773426, at *9 (N.D. Cal. Oct. 23, 2017) ("KMF's reliance on [*Goldman*] is misplaced" because "the defendant had not engaged in any deceptive conduct"); *Krommenhock v. Post Foods, LLC*, 2017 WL 2378029, at *20 (N.D. Cal. June 1, 2017) (distinguishing *Workman*).[2]

*Pelayo v. Nestle USA, Inc.*, 989 F. Supp. 2d 973 (C.D. Cal. 2013) is similarly distinguishable. Numerous courts have criticized *Pelayo* in natural labeling cases and declined to follow it. *See Jou*, 2013 WL 6491158, at *8 (stating *Pelayo* "is at odds with basic logic, contradicts the FTC statement on which it relies, and appears in conflict with the holdings of many other courts, including the Ninth Circuit."); *Bohac v. Gen. Mills, Inc.*, 2014 WL 1266848, at *7 (N.D. Cal. Mar. 26, 2014) (same); *Tsan v. Seventh Generation, Inc.*, 2015 WL 6694104, at *5

---

[2] Defendants contend that *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934 (7th Cir. 2001) stands for the proposition that an ingredients list can dispel any confusion if the front labeling is ambiguous. *See id.* at *5. Like *Parmesan Cheese*, however, *Bober* did not involve an ingredients list identifying chemicals that are not commonly known, and Defendants are construing *Bober* in a manner that is contrary to the Ninth Circuit's decision *Williams*.

(N.D. Cal. Nov. 3, 2015) ("*Pelayo*'s reasoning has been heavily criticized by other courts").[3]

Moreover, contrary to *Pelayo*, the FTC has explicitly warned marketers that the use of the term

"natural" may be deceptive:

> Marketers that are using terms such as natural must ensure that they can substantiate whatever claims they are conveying to reasonable consumers. *If reasonable consumers could interpret a natural claim as representing that a product contains no artificial ingredients, then the marketer must be able to substantiate that fact.*

75 Fed. Reg. 63552, 63586 (Oct. 15, 2010) (emphasis added).

### B.   The Court Should Deny Defendants' Request to Stay this Action

Next, Defendants ask this Court to stay this case indefinitely based on speculation that the

FDA will, at some unspecified time in the future, issue regulations governing "natural" labeling on

food, which "may" (or may not) "be useful" in the context of a cosmetic labeling case.  MTD at

12-14.  As far as Plaintiffs are aware, every court addressing this issue in the context of natural

labeling on cosmetics denied motions to stay because the FDA has expressed no interest regulating

that issue.  *See Gasser*, 2017 WL 4773426, at *10; *Brenner*, 2016 WL 8192946, at *8 ("Defendant

has not provided a single case where a district court in this Circuit stayed a case relating to a

'natural' label on a cosmetic under the primary jurisdiction doctrine pending the outcome of these

FDA proceedings.").[4]  The Ninth Circuit's most recent decision addressing the primary jurisdiction

---

[3] *See also Surzyn v. Diamond Foods, Inc.*, 2014 WL 2212216, at * 4 (N.D. Cal. May 28, 2014) ("The Court concludes the *Pelayo* is not persuasive, and declines Defendant's invitation to follow it."); *Segedie v. Hain Celestial Grp. Inc.*, 2015 WL 2158374, at *11 n.4 (S.D.N.Y. May 7, 2015) ("the weight of authority has shifted away from *Pelayo*"); *Barron v. Snyder's-Lance, Inc.*, 2015 WL 11182066, at *12 (S.D Fla. Mar. 20, 2015) ("[T]he Court remains unpersuaded by *Pelayo*."); *Garcia v. Kashi Co.*, 43 F. Supp. 3d 1359, 1384-85 (S.D. Fla. 2014) ("[N]o subsequent case has adopted *Pelayo*'s position, and two cases have affirmatively rejected it. … For the same reasons, this Court rejects *Pelayo*.").

[4] *See also Fagan*, 2014 WL 92255, at *1 (denying a motion to stay action challenging Neutrogena sunscreen labeled "100% naturally sourced" because the "FDA has affirmed that proceedings to define the term 'natural' [in the context of cosmetics] do not fit within [its] current health and safety priorities."); *Goldemberg v. Johnson & Johnson Cons. Cos., Inc.*, 8 F. Supp. 3d 467, 477 (S.D.N.Y. 2014) (denying a motion to stay action regarding "Active Naturals" cosmetics because "the FDA has not begun to promulgate a rule concerning the term 'natural' in cosmetics"); *Langan*,

doctrine in the context of "natural" labeling affirmed the lower court's denial of a motion to stay the case under that doctrine. *See Brazil*, 660 Fed. Appx. at 533 ("The district court's decision not to stay or dismiss this case under the doctrine of primary jurisdiction was not an abuse of discretion."). The same outcome is warranted here for the reasons set forth below.

> **1.      The FDA's Request for Comments Applies Only to Food, and Speculation That the FDA Might Provide Guidance on Cosmetics Cannot Support a Stay**

It is improper to issue a stay "based on speculation about what the FDA might do in the future." *Rahman v. Mott's LLP*, 2014 WL 1379655, at *3 (N.D. Cal. Apr. 8, 2014). The Ninth Circuit has warned against lengthy stays that "needlessly delay resolution of the claims" or that "would significantly postpone a ruling that a court is otherwise competent to make." *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 760–61 (9th Cir. 2015).

Here, it is speculative whether the FDA's request for comments will result in any rulemaking at all with respect to food labeling (much less cosmetics), and even if it did, that process would take years to complete.[5] The FDA already has a long-standing informal policy defining the term "natural" in the context of food labeling,[6] and the first question raised in the FDA's Request for Comments is: "Should we define, through rulemaking, the term 'natural?' Why or why not?" Request for Comments, at 69908 (Plaintiffs' RJN, Ex. 1). Hence, as another court in this District recently explained when denying a similar motion to stay, the FDA could decline to take any action at all. *See Gasser*, 2017 WL 4773426, at *10.

---

95 F. Supp. 3d at 293 ("invoking the primary jurisdiction doctrine . . . would do little more than protract matters" in a case challenging sunscreen labeled "natural protection"); *Segedie v. Hain Celestial Grp., Inc.*, 2015 WL 2168374, at *13 (S.D.N.Y. May 7, 2015) ("The Court rejects Defendant's assertion that the FDA will imminently regulate the term 'natural.'").

[5] Defendants repeatedly mischaracterize the FDA's Request for Comments as "current rulemaking" or "active" rulemaking, but that is incorrect.

[6] Since at least 1993, the FDA has informally defined "natural" in the context of food labeling to mean "that nothing artificial or synthetic . . . has been included in, or added to, a food that would not normally be expected to be in the food. 58 Fed. Reg. 2302, at 2407 (Jan. 6, 1993); *see also* Request for Comments, at 69906 (Plaintiffs' RJN, Ex. 1) (referencing informal policy on "natural" labeling).

Notably, on January 6, 2014, the FDA sent a letter to three federal judges adjudicating "natural" food lawsuits that had previously been stayed under the primary jurisdiction doctrine. Jan. 6, 2014, FDA Letter to Judges Gonzalez Rogers, White, and McNulty (Plaintiffs' RJN, Ex. 8). In that letter, the FDA described the many issues that it would have to consider in creating a formal definition for "natural," from genetic engineering to certain processing technologies to First Amendment considerations. The FDA stated that as a result, "even if we were to embark on a public process to define 'natural' in the context of food labeling, **there is no assurance that we would revoke, amend or add to the current policy, or develop any definition at all**." *Id.* at p.2 (emphasis added). After receiving that letter, all three courts lifted the stay. *See Barnes v. Campbell Soup Co.*, N.D. Cal. Case No. 3:12-cv-05185 (Dkt. No. 58); *Cox v. Gruma Corp.*, N.D. Cal. Case No. 4:12-cv-06502 (Dkt. No. 71); *In re Gen. Mills, Inc. Kix Cereal Litig.*, D.N.J Case No. 2:12-cv-00249 (Dkt. No. 98) (Plaintiffs' RJN, Exs. 3-5).

Defendants' position also relies on speculation that any action the FDA takes with respect to natural food labeling will prompt it to take further action concerning cosmetics. But the FDA has expressed no interest in that subject. *See Gasser*, 2017 WL 4773426, at *10 (explaining that the 2015 Request for Comments "makes no reference to cosmetics"); *accord Brenner*, 2016 WL 8192946, at *8. Notably, the FDA published a "Fact Sheet" on its website addressing "natural" labeling on cosmetics, which warns against false labeling of cosmetics as "natural" but does not say that the FDA's November 2015 Request for Comments will affect that issue. FDA, Small Business & Homemade Cosmetics: Fact Sheet, p.4 (Plaintiffs' RJN, Ex. 6). The FDA reiterates in the Fact Sheet that the agency "has not defined the term 'natural' and has not established a regulatory definition for this term in cosmetic labeling." *Id.* This conscious inaction by the FDA demonstrates that staying this case indefinitely would not serve the efficiency principle underlying the primary jurisdiction doctrine. *See Rhoades v. Avon Prod., Inc.*, 504 F.3d 1151, 1165 (9th Cir. 2007) ("the deciding factor should be efficiency" when evaluating the primary jurisdiction doctrine).

### 2.     Defendants' Authorities Do Not Support a Stay

All but one of Defendants' authorities involved food labeling,[7] and the only decision involving cosmetic labeling, *Astiana*, confirms that a stay is improper.  Like here, the plaintiff in *Astiana* challenged cosmetic products with "natural" labeling.  *Astiana*, 783 F.3d at 756.  On appeal, the Ninth Circuit instructed the district court to determine whether a stay under the primary jurisdiction doctrine was warranted based on whether a stay "would needlessly delay resolution of claims," "whether the parties would be unfairly disadvantaged" by a stay, and whether any actions taken by the FDA during the pendency of the appeal had "changed the calculus" about whether a stay was needed.  *Id.* at 756, 760, 762.  On remand, the district court denied the motion to stay after concluding that "formal referral [to the FDA] would be futile."  *Astiana v. Hain Celestial Group, Inc.*, N.D. Cal. Case No. 4:11-cv-06342, October 9, 2015 Order On Motion to Stay, at 3 (Plaintiffs' RJN, Ex. 2).  That conclusion was based on a letter from the FDA to the plaintiff's counsel stating, "'we respectfully decline to make a determination regarding the term 'natural' in cosmetic labeling at this time.'"  *Id.* at 2:24-25 (quoting FDA letter); *see also* March 7, 2013 FDA letter quoted in *Astiana* Stay Order (Plaintiffs' RJN, Ex. 7).

Defendants' reliance on *Kane v. Chobani, LLC*, 645 Fed. App'x 593 (9th Cir. 2016), is likewise unavailing.  For starters, *Kane* "concerned the labeling and sale of yogurt, not cosmetics." *Gasser*, 2017 WL 4773426, at *10 (distinguishing *Kane*); *see also Brenner*, 2016 WL 8192946, at *8 (denying motion to stay in natural cosmetics case after *Kane*).  Moreover, in *Kane*, the Ninth Circuit specifically instructed on remand that if the FDA's "apparently imminent resolution of the . . . 'natural' issue[] [was] illusory," then that fact would bear on whether a continued stay was warranted.  *Kane*, 645 F. App'x at 595, n.1.  As the court in *Gasser* later noted when distinguishing *Kane*, two years after the FDA's Request for Comments, "there is no pending proceeding or date in sight, and no evidence that a definition for 'natural' is being contemplated for cosmetics."  *Gasser*, 2017 WL 4773426, at *10.  Thus, a stay here is improper under the standard articulated in *Kane*.

---

[7] *See Viggiano v. Johnson & Johnson*, 2015 WL 12860480, at *1 (C.D. Cal. June 12, 2015) (challenging food sweetener); *Mains v. Whole Foods Market, Inc.*, 2016 WL 5791414, at *1 (N.D. Cal. Apr. 18, 2016) (challenging various mislabeled foods).

Finally, the district court explained in *Martin v. Tradewinds Bev. Co.*, 2017 WL 1712533, at *4 (C.D. Cal. Apr. 27, 2017), that *Kane* does not represent a shift in favor of application of the primary jurisdiction doctrine in "natural" labeling cases:

> [S]hortly after the decision in *Kane*, the Ninth Circuit affirmed in part and reversed in part a district court's dismissal in a case involving allegedly deceptive "all natural" claims on packaged fruit products, and remanded the case for further proceedings. *See Brazil v. Dole Packaged Foods, LLC*, 660 Fed. Appx. 531 (9th Cir. 2016). Significantly, the Ninth Circuit found that the district court's decision not to stay or dismiss the case under the primary jurisdiction doctrine did not constitute an abuse of discretion. It is therefore questionable that *Kane* carries the weight Defendant ascribes to it.

The *Martin* court went on to note that in November 2016, after the *Kane* decision, another court in a natural food labeling case lifted a stay after "six months of no indication that the FDA had taken any rulemaking or informal guidance action on the question of 'natural' food labeling." *Id.* (citing *In re Hain Celestial Seasonings Prod. Consumer Litig.*, No. 8:13-1757-AG (ANx) (Dkt. Nos. 315–317) (C.D. Cal. Nov. 7, 2016)).

### 3. Defendants' Speculation that "Natural" Food Regulations "May Be Useful" Here Does Not Support a Stay

Defendants' speculation that any future action by the FDA on "natural" food labeling may provide "expert advice" and "uniformity" concerning cosmetic labeling also does not support a stay. No agency "expert advice" is needed here because Defendants acknowledge that the products at issue contain synthetic ingredients (MTD at 7, 9-10), and courts routinely decide—based on the facts of the particular case—whether "natural" labeling is misleading in light of the product's ingredients. Put another way, "[t]his case is far less about science than it is about whether a label is misleading. Plaintiff[s'] allegations of deceptive labeling do not require the expertise of the FDA to be resolved in the courts, as every day courts decide whether conduct is misleading." *Jones v. ConAgra Foods, Inc.*, 912 F. Supp. 2d 889, 898–99 (N.D. Cal. 2012); *see also Gasser*, 2017 WL 4773426, at *10 (natural labeling cases do not involve "a particularly complicated issue" triggering

the primary jurisdiction doctrine).[8]

Defendants' "uniformity" argument also overlooks that whether a misrepresentation has the capacity to confuse or deceive a reasonable consumer turns on a case-by-case analysis of the facts. *See Williams*, 552 F.3d at 938-39. Indeed, the Federal Trade Commission has already declined to provide "general guidance" on natural labeling because of "the unremarkable fact that the use of 'natural' [labeling] may be deceptive in some instances, but not in others." *Jou*, 2013 WL 6491158, at *8 (analyzing 75 Fed. Reg. 63552 (2010)). In sum, there is no basis for the Court to invoke the doctrine of primary jurisdiction or issue a stay.

## C.   Plaintiffs Adequately Allege Claims Against Defendant Hain Celestial

Next, Defendants argue that Plaintiffs have failed to state a claim against Defendant Hain Celestial and that the FAC is "bereft of any factual allegations suggesting that Hain Celestial was involved in producing, advertising, or selling the six deodorant sticks at issue." MTD at 15. Defendants ignore fundamental allegations in Plaintiffs' FAC. For instance, Plaintiffs allege that Hain Celestial and Jāsön Natural "produce, market and distribute various skin care and hygiene products in retails stores across the United States" including the Jāsön deodorant sticks. FAC ¶ 17. Similarly, Plaintiffs contend that Hain Celestial and Jāsön Natural "manufacture, distribute, advertise and sell" the Jāsön deodorant sticks. *Id.* ¶ 4. Earlier this year in *Gordon*, 2017 WL 213815, the district court rejected the same argument Hain Celestial is making here. The court found that the allegation that "Hain Celestial 'manufactures and sells' the Jāsön Natural Products alleged purchased by plaintiff" was sufficient to assert that "Hain Celestial directly engaged in [the alleged wrongful] conduct." *Id.* at *8. There is no reason for the Court to reach a different conclusion in this case.

---

[8] *See also*, *e.g.*, *Delacruz v. Cytosport*, 2012 WL 2563857, at *10 (N.D. Cal. June 28, 2012) ("The FDA's expertise ... is not necessary to determine whether the labels are misleading. The reasonable-consumer determination and other issues involved in Plaintiff's lawsuit are within the expertise of the courts to resolve."); *Johnson v. Triple Leaf Tea Inc.*, 2014 WL 4744558, at *7 (N.D. Cal. Sept. 23, 2014) ("there is no showing or suggestion that the FDA has expertise in analyzing false advertising claims.").

Moreover, Plaintiffs' allegations about Hain Celestial and Jāsön Natural working together to manufacture, promote and sell the Jāsön deodorant products are consistent with Hain Celestial's own statements in its 2017 annual report in which it claims that its "business strategy is to integrate our brands under one management team within each operating segment and employ uniform marketing, sales and distribution programs when attainable." Plaintiffs' RJN, Ex.9 at 5 (Hain Celestial September 13, 2017 10-K). Hain Celestial's 2017 annual report also states that it operates a manufacturing facility in Culver City, California at which it produces Jāsön products. *Id.* at 11 ("Our United States segment operates the following manufacturing facilities: … Culver City, California, which produces Alba Botanica, Avalon Organics, Jason and Earth's Best personal care products."). Hain Celestial also brags that it is "a leader in many organic and natural products categories, with many recognized brands in the various market categories it serves, including … Jason." *Id.* at 34. Hain Celestial and Jāsön Natural clearly work together to manufacture and sell the deodorant sticks at issue. Plaintiffs have adequately alleged wrongdoing by Hain Celestial.

### D. Defendants' Arguments for Dismissal of Specific Claims Lack Merit

#### 1. Plaintiffs' Allegations Satisfy Rule 9(b)

Claims sounding in fraud must allege "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swearingen*, 2017 WL 1806483, at *6 (internal quotation omitted). The plaintiff must set forth "what is false or misleading about a statement, and why it is false." *Id.* This is not a difficult standard to meet in the context of natural labeling cases. In *Astiana v. Ben & Jerry's Homemade, Inc.*, 2011 WL 2111796, at *6 (N.D. Cal. May 26, 2011), for example, the plaintiffs claimed that the defendants' statements were allegedly misleading because they did not disclose that their products contained synthetic ingredients. The plaintiffs alleged that the "who" was the defendants, the "what" was the statement that product was "all natural," the "when" was "since at least 2006," and "throughout the class period," and the "where" was on the product labels. *Id.* Judge Hamilton found in *Astiana* that these allegations sufficiently explained the "who, what, when, where, and how" of the alleged deception. *See Swearingen*, 2017 WL 1806483 at *6 (explaining *Astiana*); *see*

*also*, *e.g.*, *Gasser*, 2017 WL 4773426, at *6 (denying motion to dismiss under Rule 9(b) in

"natural" labeling case).  The allegations here are similar to those alleged in *Astiana*:

- **Who:**  "Defendants produce, market and distribute various consumer skin care and hygiene products in retail stores across the United States.  Among others, those products include JĀSÖN® deodorant sticks (the 'Products').  FAC ¶ 17; *see also id.* at ¶¶ 2-4;

- **What and Where: "**. . . the front packaging of each one of the Products clearly states that it is "Naturally Fresh," "Pure Natural Deodorant," Pure Natural Deodorant Stick," and/or "Natural Pioneer Since 1959."  *Id.* at ¶ 5; *see also id.* at ¶¶ 23-24 (depicting labeling).

- **When:**  "The JĀSÖN® brand deodorant stick products have been labeled "Naturally Fresh," "Pure Natural Deodorant," Pure Natural Deodorant Stick," and/or "Natural Pioneer Since 1959" at all times during the last four years, at least *Id.* at ¶ 25.

- **How:** "Contrary to the labeling, however, every purportedly natural Product contains tocopheryl acetate, glycerin and ethylhexylglycerin . . . .  *Id.* at ¶ 7.

Against these allegations, Defendants make two arguments, neither of which have merit.

They first contend that Plaintiffs did not allege "the identity or the cost of comparable deodorant

products . . . or the size of the price premium they allegedly paid."  MTD at 17.  That argument is

contrary to *Astiana*, and Defendants cite no authority for the proposition that those additional

allegations are required by Rule 9(b).  *See Nelson v. Xacta 3000 Inc.*, 2010 WL 1931251, at *7 n.3

(D.N.J May 12, 2010) ("A specific dollar amount is not required by Rule 9(b)").  The only case

Defendants cite, *Bailey v. Kind, LLC*, 2016 WL 3456981, at *6 (C.D. Cal. June 16, 2016), held that

allegations that plaintiffs paid a price premium were sufficient for purposes of <u>standing</u>, and did not

hold that plaintiffs were required to allege the amount of the price premium.  Moreover, Plaintiffs'

price premium allegations here are similar to those that the court held were sufficient in *Bailey*.

*See, e.g.,* FAC ¶¶ 8, 13-14, 55.

Defendants also contend that reliance allegations are deficient because "Plaintiffs have not

alleged . . . that they suffered economic injury in reliance on the term 'natural.'"  MTD at 17.  Here

again, however, Defendants' own case *Bailey* contradicts their position. The *Bailey* court held that

reliance allegations were sufficient for purposes of Rule 9(b) because they included allegations

that:  (1) the plaintiffs saw and relied on misrepresentations; (2) explained why the

misrepresentations were false; and (3) the plaintiffs would not have purchased the product at issue at the price paid but for the misrepresentation. *Bailey* 2016 WL 3456981, at *5. Similarly, in *Ehret v. Uber Technologies, Inc.*, 68 F. Supp. 3d 1121, 1128 (N.D. Cal. 2014), this Court held that allegations that a plaintiff saw and relied on representation at issue, and that the representations influenced the plaintiffs' purchase decision, were sufficient for purposes of Rule 9(b), even without reference to the "precise" representation or "precise date [the plaintiff] viewed the representation." The allegations here are more than sufficient under *Bailey* and *Ehret*. FAC ¶¶ 13-14.

### 2.   Plaintiffs Sufficiently State an Express Warranty Claim

"A plaintiff asserting a breach of warranty claim must allege facts sufficient to show that (1) the seller's statements constitute an affirmation of fact or promise or a description of the goods; (2) the statement was part of the basis of the bargain; and (3) the warranty was breached." *Gasser*, 2017 WL 4773426, at *6. Numerous courts adjudicating natural labeling cases have held that "natural" labeling is a "description of goods," and thus an actionable warranty. *E.g.*, *Id.* (collecting authorities); *Brown v. The Hain Celestial Grp., Inc.*, 913 F. Supp. 2d 881, 900 (N.D. Cal. 2016) ("Pure, Natural & Organic" an express warranty); *Brenner*, 2016 WL 8192946, at *8 ("Plaintiff has plausibly alleged that the 'Natural Clean' label is false and has otherwise adequately plead the elements of an express warranty claim."). The natural labeling is part of the bargain because Plaintiffs allege they would not have purchased the products on the same terms if they had known the truth about the unnatural ingredients. FAC ¶ 67; *see also Gasser*, 2017 WL 4773426, at *6. Finally, the warranty was breached because the challenged products contain ingredients that are unnatural and synthetic and "do not have the characteristics, uses, or benefits as promised." FAC ¶ 67.

None of the cases Defendants cite held that "natural" labeling can never be an express warranty, and none support dismissal. In *Viggiano v. Hansen Natural Corp.*, 944 F. Supp. 2d 877, 983-94 (C.D. Cal. 2013), the court dismissed "natural" labeling claims because the challenged representation was that a soda contained "all natural flavors," but the plaintiff "[did] not identify any artificial flavor in the drink." *Id.* at 894. Here, in contrast, the FAC identifies the artificial

ingredients at issue.  FAC, ¶ 7.  Defendants also cite *McKinniss v. Kellogg USA*, 2007 WL 4762172, at *5 (C.D. Cal. Sept. 19, 2007), where the court found that the representation that sugary cereals such as Trix and Berry Berry Kix contained "natural fruit flavors" was not a warranty that there was real fruit in the cereal.  *McKinniss* therefore bears no resemblance to this case.  *See Madenlian v. Flax USA, Inc.*, 2014 WL 7723578, at *4 n.7 (C.D. Cal. Mar. 31, 2014) (distinguishing *McKinniss* in case challenging purportedly all natural flaxseed milk).[9]

### 3.    Plaintiffs Sufficiently State an Unjust Enrichment Claim

Defendants' arguments for dismissal of the unjust enrichment claim rehash their arguments concerning the reasonable consumer standard, and Defendants do not offer any independent basis to dismiss the claim.  MTD at 18.  The Court should therefore deny dismissal of the unjust enrichment claim for the same reasons set forth above.

### E.    The Court Should Reject Defendants' Arguments for Dismissal of the Nationwide Class Allegations

Defendants ask the Court to "dismiss Plaintiffs' claims on behalf of putative class members outside of California for lack of standing."  MTD at 18.  That request is contrary to the law for two independent reasons set forth below.

### 1.    Rule 12(b)(6) Does Not Permit Dismissal of Class Allegations

Defendants are seeking premature resolution of the class allegations, at least with respect to a nationwide class.  As this Court has explained, "[t]he Ninth Circuit has opined that 'compliance with Rule 23 is not to be tested by a motion to dismiss for failure to state a claim.'"  *Riva v. Pepsico, Inc.*, 82 F. Supp. 3d 1045, 1063 (N.D. Cal. 2015) (quoting *Gillibeau v. City of Richmond,* 417 F.2d 426, 432 (9th Cir.1969); *see also Parino v. BidRack, Inc.,* 838 F. Supp. 2d

---

[9] Defendants also cite *Nabors v. Google, Inc.*, 2011 WL 3861893 (N.D. Cal. Aug. 30, 2011), which involved the alleged inability ability of smartphones to reliably connect to 3G networks.  The district court dismissed the warranty claim with leave to amend because the plaintiff failed to "identify the particular commercial or advertisement upon which he relied [or] describe with requisite specificity the content of that particular commercial or advertisement."  *Nabors* is inapposite because the FAC here contains those allegations.  FAC, *e.g.*, ¶¶ 5, 23, 24, 44.

900, 909 (N.D. Cal. 2011) (same).  "There are [three] convincing reasons" for concluding that motions to dismiss class allegations are "improper":

> First, Rule 12(b)(6) permits a party to challenge a pleading on the basis that it fails 'to state a claim upon which relief can be granted.'  But class treatment is a 'procedural device,' not a claim for relief.  Thus, by its plain language, Rule 12(b)(6) outs itself as the wrong device for attacking class treatment.  Second, decisions rendered under Rule 12(b)(6) and Rule 23 are subject to different standards of review.  [Third], Rule 23(f) provides a mechanism by which a plaintiff (or defendant) can petition for review of a denial (or grant) of class certification under Rule 23, whereas, de facto denials of 'classwide claims' under Rule 12(b)(6) are ineligible for immediate discretionary review (barring exceptional circumstances).

*Casas v. Victoria's Secret Stores, LLC*, 2014 WL 12708972, at \*9 (C.D. Cal. Oct. 20, 2014) (emphasis added and internal citations omitted).  Although a few courts have resolved class allegations at the pleading stage, that practice is contrary to the Ninth Circuit's decision in *Gillibeau* and "it is in fact rare to do so in advance of a motion for class certification."  *Cruz v. Sky Chefs, Inc.*, 2013 WL 1892337, at \*7 (N.D. Cal. May 6, 2013) (collecting authorities). Accordingly, the Court can and should reject Defendants' arguments on procedural grounds.

### 2. Defendants' Arguments Are Contrary to the Ninth Circuit's Decision in *Melendres*

In *Melendres*, the Ninth Circuit explained that there are two rubrics for determining whether a lead plaintiff may pursue claims on behalf of unnamed class members: the "standing approach" and the "class certification approach."

> The "standing approach" treats dissimilarities between the claims of named and unnamed plaintiffs as affecting the "standing" of the named plaintiff to represent the class. In other words, if there is a disjuncture between the injuries suffered by named and unnamed plaintiffs, courts applying the standing approach would say the disjuncture deprived the named plaintiff of standing to obtain relief for the unnamed class members. . . .  The "class certification approach," on the other hand, "holds that **once the named plaintiff demonstrates her individual standing to bring a claim, the standing inquiry is concluded**, and the court proceeds to consider whether the Rule 23(a) prerequisites for class certification have been met."

*Melendres*, 784 F.3d at 1261–62 (emphasis added, internal citations omitted).  The Ninth Circuit stated, "[w]e adopt the class certification approach," and warned against "conflat[ing] standing and class certification."  *Id.* at 1262.

1   As a result, "representative parties who have a direct and substantial interest have

2   standing," and "the question whether they may be allowed to present claims on behalf of others

3   who have similar, but not identical, interests depends not on standing, but on an assessment of

4   typicality and adequacy of representation." *Id.*; *see also*, *e.g.*, *Sosna v. Iowa*, 419 U.S. 393, 403

5   (1974) (once a named plaintiff establishes individual standing, the examination shifts "from the

6   elements of justiciability to the ability of the named representatives to fairly and adequately protect

7   the interests of the class"); *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 423 (6th Cir. 1998)

8   ("whether a plaintiff will be able to represent the putative class, including absent class members,

9   depends solely on whether he is able to meet the additional criteria encompassed in Rule 23").

10   District courts have followed *Melendres* in a variety of consumer class actions where the

11   defendant argued on a motion to dismiss that the plaintiff lacked standing to represent certain

12   putative class members.  *See*, *e.g.*, *In re Volkswagen "Clean Diesel" Marketing, Sales Practices,*

13   *and Prods. Liability Litig¸* 2017 WL 3058563, at *4 (N.D. Cal. July 19, 2017); *Stotz v. Mophie*

14   *Inc.*, 2017 WL 1106104, at *6 (C.D. Cal. Feb. 27, 2017).  Consistent with *Melendres*, numerous

15   courts in the Ninth Circuit also have held that where a named plaintiff has established individual

16   standing to bring claims in his or her own right, but asserts parallel common law claims arising

17   under different states' laws on behalf of a putative class, the issue is resolved in connection with

18   Rule 23's requirements.  *See Viggiano v. Johnson & Johnson*, 2015 WL 12860480, at *6 (C.D.

19   Cal. June 12, 2015) (rejecting same argument Defendants make here); *In re 5-hour ENERGY*

20   *Marketing and Sales Litig.*, 2014 WL 5311272, at *18 (C.D. Cal. Sept. 4, 2014) (same); *Ellsworth*

21   *v. U.S. Bank, N.A.*, 2014 WL 2734953, at *31 (N.D. Cal. June 13, 2014) (same); *Bruton v. Gerber*

22   *Prods. Co.*, 2014 WL 172111, at *13 (N.D. Cal. Jan. 15, 2014) (same); *In re Hydroxycut Mktg. and*

23   *Sales Practices Litig.*, 801 F. Supp. 2d 993, 1004-5 (S.D. Cal. 2011) (same); *Jepson v. Ticor Title*

24   *Ins. Co.*, 2007 WL 2060856, at *1-2 (W.D. Wash. May 1, 2007) (same).

25   Here, Defendants do not dispute that Plaintiffs have standing to bring their individual

26   common law claims for fraud, breach of warranty and unjust enrichment, and therefore under

27   *Melendres* "the standing inquiry is concluded."  *Melendres*, 784 F.3d at 1262.  Defendants may

28

counter that standing is "claim-specific," and therefore Plaintiffs must demonstrate that they also have standing to bring separate "claims" under the laws of other states, but there are two problems with that argument.  The first is that it does not fit within any of the traditional three elements of standing—injury, traceability, and redressibility—which have never posed a high bar to justiciability anyway.  *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).  The named Plaintiffs satisfy each of those elements regardless of whether they represent out-of-state class members.

Second, the "essential" issue in standing is whether the "representative parties . . . have a direct and substantial interest" in the "dispute." *Melendres*, 784 F.3d at 1262; *Warth v. Seldin*, 422 U.S. 490, 498 (1975) (the "essential" question of standing "is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues").  The dispute in a false labeling case like this one is the same for Plaintiffs and out-of-state class members "because Defendants' conduct was uniform and likely affected consumers in every state in a similar fashion." *Viggiano*, 2015 WL 12860480, at *6.  Notably, Defendants do <u>not</u> argue that adjudicating the claims of out-of-state class members somehow involves resolution of materially different facts or legal issues, and even if Defendants argue that is the case, under *Melendres* that is a question about commonality or predominance, not standing.[10]

Finally, the decisions cited by Defendants are not instructive because most pre-date *Melendres*.  In this regard, Defendants lean heavily on this Court's decision in *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051 (N.D. Cal. 2015), where the defendants made the same argument that Defendants make here.  Importantly, this Court rejected the defendants' argument that Article III <u>requires</u> courts to consider at the pleading stage whether named plaintiffs have standing to pursue

---

[10] Defendants cannot argue for the first time on reply that variations in state laws supports dismissal of the nationwide class allegations because"[i]ssues raised for the first time in the reply brief are waived." *Bazuaye v. I.N.S.*, 79 F.3d 118, 120 (9th Cir. 1996).  Moreover, whether differences in state laws are material for purposes of class certification requires a case-by-case analysis of the facts, and even where they are material, the issue can often be resolved by narrowing the class definition or certifying subclasses. *See Forcellati v. Hyland's Inc.*, 876 F. Supp. 2d 1155, 1159 (C.D. Cal. 2012) (denying motion to dismiss class allegations).

claims on behalf of absent class members, and concluded it was an issue that fell within the court's discretion. *See id.* at 1074. Moreover, the standing analysis in *In re Carrier IQ* was driven by "the facts of [that] case," which involved complex, multi-district proceedings with numerous plaintiffs, defendants and technological issues impacting the scope of discovery. *Id.* at 1074. This case, in contrast, is a simple false labeling case. Discovery will largely be the same regardless of whether this case goes forward on a nationwide or California-only basis. The principal difference will relate to sales records, which are not burdensome to produce anyway. Thus, to the extent Defendants here argue that the Court should exercise its discretion to dismiss the nationwide class allegations on standing grounds, Plaintiffs respectfully submit that the facts of this case do not warrant it, and *Melendres* no longer permits it.[11]

## III. CONCLUSION

For the foregoing reasons, the Court should deny the Motion to Dismiss or Stay in its entirety. To the extent the Court determines that the pleadings are deficient in any respect, Plaintiffs respectfully request leave to amend.

Dated: December 1, 2017                    Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:_____/s/ Joel D. Smith_____
                    Joel D. Smith

L. Timothy Fisher (State Bar No. 191626)
Joel D. Smith (State Bar No. 244902)
Yeremey O. Krivoshey (State Bar No. 295032)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: ltfisher@bursor.com

---

[11] The only post-*Melendres* decision Defendants cite is *Corcoran v. CVS Health Corp., Inc.*, 2016 WL 4080124 (N.D. Cal. July 29, 2016). That case is not instructive because the plaintiffs did not cite *Melendres* and apparently conceded (erroneously) that courts have discretion to dismiss nationwide allegations at the pleading stage. *See id.* at *3.

1

jsmith@bursor.com
ykrivoshey@bursor.com

2

Dated: December 1, 2017

3

**NATHAN & ASSOCIATES, APC**

By: _____*/s/ Reuben D. Nathan*_____

4

Reuben D. Nathan

5

Reuben D. Nathan (State Bar No. 208436)

6

600 W. Broadway, Suite 700
San Diego, California 92101

7

Telephone: (619)272-7014
Facsimile:  (619)330-1819

8

E-Mail: rnathan@nathanlawpractice.com

9

Attorneys for Plaintiffs

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28